# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3032

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Luqman Abdul-Aziz, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 11, 2007
Filed: May 29, 2007

_____

Before WOLLMAN and MELLOY, Circuit Judges, and NANGLE,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Luqman Abdul-Aziz was convicted of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to a term of 33 months' imprisonment, followed by three years of supervised release. Abdul-Aziz appeals from his conviction and sentence. We vacate the sentence and remand for resentencing.

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

In June 2004, police officers executed a search warrant at Abdul-Aziz's residence in Des Moines, Iowa. During the search of the residence, officers found a rifle located in the closet of one of the bedrooms. The rifle was enclosed in a case which, in turn, was enclosed in a box. In that same bedroom, officers also found numerous documents bearing Abdul-Aziz's name, including bank statements, bills, checks, a car title, tax statements, business cards, and a resume. Abdul-Aziz was subsequently indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (2000).

Prior to trial, Abdul-Aziz requested to proceed *pro se* and, after a colloquy with the district court, he was permitted to do so. Abdul-Aziz was provided with stand-by counsel in case he should change his mind during the proceedings. Abdul-Aziz thereafter proceeded *pro se* through much of the trial, but relied on stand-by counsel for a portion of it.

At trial, the government presented evidence of what was found at the residence, as well as the testimony of Officer Ronald Foster, who was present during the execution of the search warrant, and Special Agent Phillip Pritchett, who examined the rifle found during the search. The district court did not, however, admit the testimony of Neil Meoni, the individual who allegedly sold Abdul-Aziz the rifle. During trial, the government entered into evidence a stipulation acknowledging that Abdul-Aziz had been previously convicted of a crime punishable by more than one year.

During deliberations, the jury submitted a question asking for clarification regarding a jury instruction pertaining to the different kinds of possession. The district court declined to provide further clarification, and the jury subsequently returned a guilty verdict. At sentencing, the district court, pursuant to U.S.S.G. §

3C1.1, imposed an obstruction of justice enhancement because Abdul-Aziz testified at trial that he had no knowledge that the firearm was in the closet.

## II.

Abdul-Aziz raises six issues on appeal, which we address in turn.

## A.

Abdul-Aziz contends that his Sixth Amendment right to counsel was violated because his waiver of this right was not knowingly and intelligently given. The Sixth Amendment guarantees a defendant the right to counsel, as well as the right to waive counsel. United States v. Mentzos, 462 F.3d 830, 838 (8th Cir. 2006), *cert. denied*, 2007 WL 1110680 (U.S. Apr. 16, 2007). Before permitting a defendant to represent himself, however, "the trial court must determine that he is competent to stand trial and that he is knowingly and voluntarily waiving his right." Wise v. Bowersox, 136 F.3d 1197, 1202 (8th Cir. 1998). We review *de novo* the grant of a defendant's motion to represent himself and will uphold such grant "'if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self representation.'" Mentzos, 462 F.3d at 838 (quoting United States v. Patterson, 140 F.3d 767, 774-75 (8th Cir. 1998)).

We conclude that Abdul-Aziz was adequately warned about the dangers and disadvantages of self-representation and that his decision to proceed *pro se* was knowingly and intelligently given. Prior to allowing Abdul-Aziz to represent himself, the district court sought assurances from Abdul-Aziz that he understood the nature of the charges being brought against him, repeatedly warned Abdul-Aziz about the disadvantages and complexities involved in representing himself, and strongly encouraged him to seek the assistance of counsel. Despite these warnings, Abdul-Aziz still insisted on proceeding *pro se*, assuring the court that he understood the

charges being brought against him and the ramifications of his decision. Further, the district court noted that Abdul-Aziz appeared to be an intelligent, well-spoken individual. He has at least several years of education beyond high school, had previously represented himself in criminal proceedings, and, as evidenced by his cross-examination of witnesses, objections, and motions at trial, had a sense of how to put on a defense – all evidence that he was "able to grasp the nature of the charges against him and that he had the intellectual capacity required to understand the consequences of his decision." Patterson, 140 F.3d at 775 (internal quotations and citations omitted). Additionally, Abdul-Aziz's consultation with his appointed stand-by counsel during the trial, and later decision to have him take over the case, further demonstrates that he was fully aware of his right to counsel. See Mentzos, 462 F.3d at 838.

Abdul-Aziz's contention that his waiver was not voluntary because he was allegedly forced to choose between himself and what he perceived to be incompetent counsel is unpersuasive. In his discussions with the district court, Abdul-Aziz said that he "would prefer to be represented by somebody," but that he desired to represent himself because he had been "sold out and misrepresented" and because "so much has sometimes been overshadowed and overlooked." Abdul-Aziz later agreed, however, that his appointed counsel was a capable attorney and permitted counsel to take over his representation during the trial. Further, Abdul-Aziz does not present any evidence showing, nor does he assert, that his appointed counsel was otherwise inadequate or unqualified. Accordingly, Abdul-Aziz's decision to represent himself was not compelled by a perception of incompetent counsel and his decision to do so cannot be considered involuntary.

-4-

B.

Abdul-Aziz asserts that the district court erred when, over his objection, it permitted Officer Ronald Foster to testify about a statement Abdul-Aziz made during the search of his residence. According to Foster's testimony, Abdul-Aziz had stated during the search that the officers "could not lock him up forever and that when he gets out somebody will be sorry." "We review the district court's decision to admit evidence over a party's objection for abuse of discretion." United States v. Parker, 364 F.3d 934, 941 (8th Cir. 2004).

Abdul-Aziz argues that this testimony should have been excluded under Rules 402 and 403 of the Federal Rules of Evidence because it was irrelevant and unfairly prejudicial. As the government points out, however, the testimony was relevant to show Abdul-Aziz's consciousness of guilt. Furthermore, we cannot say that the probative value of this testimony was substantially outweighed by the danger of unfair prejudice. We therefore conclude that the district court did not abuse its discretion in admitting this portion of Foster's testimony.

C.

Abdul-Aziz contends that the district court erred when it excluded the testimony of Neil Meoni, the individual who allegedly sold the rifle to Abdul-Aziz. Abdul-Aziz objected to the government's attempt to call Meoni as a witness during its case in rebuttal because the government had not previously informed him that Meoni would be called as a witness. The district court agreed and excluded Meoni's testimony, but permitted the government to make an offer of proof, during which Meoni testified that he had sold the rifle to an Arabic man with an Arabic accent and identified Abdul-Aziz as the person to whom he sold the rifle.

Abdul-Aziz now contends that Meoni's testimony should have been admitted at trial because it would have been exculpatory.[2] The testimony was excluded at Abdul-Aziz's request, however, and he is therefore precluded from asserting on appeal that the district court's ruling was erroneous. McPheeters v. Black & Veatch Corp., 427 F.3d 1095, 1103 (8th Cir. 2005) ("Counsel cannot now complain of a course of action he requested . . . ."); Mach v. Abbott Co., 136 F.2d 7, 10 (8th Cir. 1943) ("[A] party cannot successfully complain of error for which he himself is responsible or of rulings which he has invited the trial court to make.").

D.

During its deliberations, the jury submitted a question to the district court, which stated: "The jury would like more definition pertaining to different types of possession. i.e. Definition of constructive possession, specifically 'power & intention at a given time . . .' Does this imply knowledge? Ref. Instruction 10." The district court declined to provide any further definitions and instructed the jury to refer to the instructions already provided. Abdul-Aziz contends that the district court erred in doing so.

"A trial court's response to a jury's request for supplemental instruction is a matter within the sound discretion of the trial court," which we review for abuse of discretion. United States v. Beckman, 222 F.3d 512, 521 (8th Cir. 2000). "This court has recognized that, in responding to a jury's request for supplemental instruction, it may be proper at times to simply refer the jury back to the original instructions." Id. After reviewing the instructions provided to the jury, we are satisfied that they adequately defined the different types of possession, as well as what is required to

---

[2]Abdul-Aziz contends that the testimony was exculpatory because he is not an Arabic man, does not speak with an Arabic accent, and therefore could not have been the individual who purchased the rifle from Meoni.

prove knowledge. We therefore conclude that the district court did not abuse its discretion when it referred the jury to the instructions that had already been given.

E.

Abdul-Aziz also contends that the evidence presented at trial was insufficient to support the jury's verdict. "We review a challenge to the sufficiency of the evidence *de novo* and 'view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that supports the jury's verdict.'" United States v. Flores, 474 F.3d 1100, 1105 (8th Cir. 2007) (quoting United States v. Chapman, 356 F.3d 843, 847 (8th Cir. 2004)). Reversal is warranted "only if 'no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt.'" Id. (alteration in original) (quoting United States v. Exson, 328 F.3d 456, 460 (8th Cir. 2003)).

To convict Abdul-Aziz of being a felon in possession of a firearm, the government was required to prove "that (1) he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) he knowingly possessed a firearm; and (3) the firearm had been in or had affected interstate commerce." United States v. Guenther, 470 F.3d 745, 747 (8th Cir. 2006). Abdul-Aziz contends the second element of the offense was not proved beyond a reasonable doubt because the evidence was not adequate to show that the rifle found at his residence was a firearm within the meaning of 18 U.S.C. § 921(a)(3) or that he knowingly possessed the rifle.

Under 18 U.S.C. § 921(a)(3), the term "firearm" includes "any weapon . . . which will or is designed to . . . expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3) (2000). As evidence that the rifle found at Abdul-Aziz's residence met this definition, the government offered the testimony of Phillip Pritchett, a Special

Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Pritchett testified that the rifle was designed to expel a projectile through the use of an explosive and, to the best of his knowledge, was a functioning firearm. While it is true, as Abdul-Aziz points out, that Pritchett did not actually test-fire the rifle and could not definitively say that it was a working firearm, § 921(a)(3) does not necessarily require that a rifle be operable to be considered a firearm. 18 U.S.C. § 921(a)(3); United States v. York, 830 F.2d 885, 891 (8th Cir. 1987). In addition, Pritchett's examination of the rifle and his subsequent testimony constitutes some evidence that the rifle was functional, even though it had not actually been test-fired. Accordingly, Pritchett's testimony constituted sufficient evidence to establish that the rifle met the definition of a firearm.

We next turn to Abdul-Aziz's assertion that the evidence does not support a finding that he knowingly possessed the firearm. Possession under § 922(g) may be either actual or constructive. United States v. Johnson, 474 F.3d 1044, 1048 (8th Cir. 2007). "Constructive possession of the firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993). Constructive possession can also be established "by a showing that the firearm was seized at the defendant's residence." Id.

Both Abdul-Aziz and his wife testified that Abdul-Aziz resided at the house where the rifle was found, and his wife testified that he had resided there since the day they moved into the house together – more than 18 months prior to the rifle's discovery.[3] His wife further stated that Abdul-Aziz was essentially the only person

---

[3]According to Abdul-Aziz's wife, the couple purchased the property and moved in on October 18, 2002. Abdul-Aziz's wife, however, is apparently the only person actually listed as the owner of the property. In any event, the record indicates that Abdul-Aziz was present during the purchase of the property and that he subsequently moved in at the same time as his wife.

who used the bedroom adjoining the closet where the rifle was located and that Abdul-Aziz stored clothes in that room, including clothes that required hangers. The government additionally introduced as evidence the numerous documents bearing Abdul-Aziz's name that were found in the room, including bank statements, a resume, bills, checks, a car title, tax statements, and business cards. We conclude that this evidence was sufficient to support a finding that Abdul-Aziz constructively possessed the firearm, as it demonstrates that Abdul-Aziz not only resided at the residence, but also had dominion over the area where the rifle was found.

We also conclude that the evidence was sufficient to support a finding that Abdul-Aziz's possession was knowing. Abdul-Aziz claimed that the firearm had been left there by the home's previous owner and that its subsequent discovery by the police officers was the first time he learned of its existence. Even assuming, *arguendo*, that the jury accepted Abdul-Aziz's contention that the firearm was left by the home's prior owner, the evidence shows that the firearm was found in the residence, that Abdul-Aziz had been living at the residence for more than 18 months, that he had been actively using the room adjoining the closet where the firearm was found (and was essentially the only person doing so), and that he had used the room to store clothes, including those that needed to be placed on hangers. From this evidence, one could infer that at some point Abdul-Aziz would have acquired knowledge that the firearm was in the closet. While the evidence supporting knowing possession is not overwhelming, we note that "a jury rarely has direct evidence of a defendant's knowledge," and that such knowledge is therefore "generally established through circumstantial evidence." United States v. Ojeda, 23 F.3d 1473, 1476 (8th Cir. 1994). Considering this evidence as a whole, and the favorable light in which it must be viewed, we cannot say that it was unreasonable for the jury to conclude that Abdul-Aziz knowingly possessed the rifle.

F.

As his final argument, Abdul-Aziz contends that the district court erred in finding that his testimony at trial warranted an enhancement for obstruction of justice. "We review a district court's factual findings underlying an obstruction of justice enhancement for clear error and its construction and application of the Guidelines de novo." United States v. Nichols, 416 F.3d 811, 821 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1633 (2006), 126 S. Ct. 1807 (2006).

Abdul-Aziz's presentence investigation report recommended that he receive a two-level obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1 because he testified at trial that he had no knowledge of the firearm being present in the house and therefore committed perjury. "A witness commits perjury when he testifies falsely under oath about a material matter with a willful intent to deceive the fact finder." United States v. Molina, 172 F.3d 1048, 1058 (8th Cir. 1999). "Committing perjury at trial constitutes an obstruction of justice within the meaning of § 3C1.1." United States v. Flores, 362 F.3d 1030, 1037 (8th Cir. 2004). A district court cannot, however, impose the departure "'simply because a defendant testifies on his own behalf and the jury disbelieves him.'" Id. (quoting United States v. Washington, 318 F.3d 845, 861 (8th Cir. 2003)). "Rather, once a defendant objects, the sentencing court must itself conduct an independent evaluation and determine whether the defendant committed perjury." Id. "While it is preferable for the district court to address each element of the alleged perjury in a separate and clear finding, the determination is sufficient if 'the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.'" Id. (quoting United States v. Dunnigan, 507 U.S. 87, 95 (1993)).

In considering the enhancement, the district court stated:

> The court has a record in which the defendant denied any knowledge of the firearm being in the house. The record also includes

-10-

not only the circumstantial evidence of the defendant having the only access to the particular area where the firearm was found, but also the specific testimony of the individual who testified that he sold the very weapon to the defendant. The jury responded to that evidence by finding that he was guilty of the offense. In order to find that he was guilty of the offense, the jury must necessarily have found that his testimony that he had no knowledge that the firearm was in the house was false.

My reading of the law on obstruction of justice in terms of its applicability to an enhancement is that that does meet the criteria for this enhancement. Accordingly, the court finds the enhancement does lie under the circumstances of this case.

We conclude that this statement falls short of what is required to impose an obstruction of justice enhancement. As set forth above, a district court is required to make an independent determination that the defendant perjured himself. Here, the district court, after restating the evidence that was in the record and referring to the jury's holding, observed only that the jury must have found Abdul-Aziz's testimony to be false and then concluded that that finding was sufficient to impose the enhancement. Although one might infer from the court's comments that it also believed Abdul-Aziz's testimony to be false, the district court did not make the explicit finding required by our decisions. The record therefore does not establish with the required clarity that the district court exercised its independent judgment in reaching its decision to impose the enhancement. In the absence of such a finding, we must remand the case for resentencing. In doing so, we recognize full well that we should not remand "merely because the district court failed to engage in a ritualistic exercise and state the obvious for the record." United States v. Boggi, 74 F.3d 470, 479 (3d Cir. 1996). Nevertheless, to affirm the enhancement in the face of this record would run counter to the requirements set forth in Dunnigan, 507 U.S. at 95, and in our decisions on point. See, e.g., Flores, 362 F.3d at 1038-39; United States v. Kessler, 321 F.3d 699, 703 (8th Cir. 2003); United States v. Brown, 311 F.3d 886, 890 (8th Cir. 2002); United States v. Brooks, 174 F.3d 950, 958-59 (8th Cir. 1999);

-11-

United States v. Benson, 961 F.2d 707, 709-10 (8th Cir. 1992); United States v. Ogbeifun, 949 F.2d 1013, 1013-14 (8th Cir. 1991).

The judgment of conviction is affirmed, the sentence is vacated, and the case is remanded to the district court for resentencing.

_____