# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2207

_____

United States of America,

        Appellee,

v.

James Edwin Pate,

        Appellant.

\* \
\* \
\* \
\* \
\*   Appeal from the United States \
\*   District Court for the \
\*   Western District of Arkansas. \
\* \
\* \
\*

_____

Submitted: January 15, 2008 \
Filed:  March 13, 2008

_____

Before WOLLMAN and SMITH, Circuit Judges, and GRITZNER,[1] District Judge.

_____

GRITZNER, District Judge.

Defendant James Pate (Pate) pled guilty to possession of a firearm after having been convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and assaulting, resisting, and impeding a law enforcement officer resulting in injury to the officer's person, in violation of 18 U.S.C. § 111(a).  The district court[2]

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

[2]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

sentenced Pate to 70 months of imprisonment. Pate appeals the district court's application of two sentencing enhancements in calculating Pate's advisory Sentencing Guidelines range. We affirm.

## I.    BACKGROUND

On November 12, 2006, while on patrol in the Ouachita National Forest in Montgomery County, Arkansas, U.S. Forestry Service Agent Tim Fincham (Agent Fincham) noticed a truck parked at the intersection of a park service road and saw Pate standing outside the truck. As Agent Fincham approached the vehicle, he observed Pate quickly attempting to shut the door of the truck bed toolbox. In the cab of the truck, Agent Fincham saw two long guns and three small children.

Agent Fincham asked Pate for his identification and hunting license. Pate did not produce the documents. Agent Fincham then asked Pate about the contents of the toolbox, and Pate became belligerent. As Agent Fincham proceeded toward the truck, Pate entered the driver's side of the vehicle and began reaching under the seat. Agent Fincham drew his firearm and ordered Pate to show his hands. Pate failed to comply with Agent Fincham's repeated commands and began yelling obscenities at Agent Fincham. After raising his hands slightly, Pate abruptly reached under the seat. Agent Fincham grabbed Pate with his left hand while maintaining his firearm in his right hand and unsuccessfully tried to remove Pate from the truck. Pate, with his left hand on the steering wheel and right hand continuing to reach under the seat, accelerated the truck, causing Agent Fincham to drag alongside. Believing Pate was reaching under the seat for a firearm, Agent Fincham shot Pate on the lower left side of Pate's body. Pate accelerated the truck again causing Agent Fincham to be thrown to his knees on the gravel road.

Agent Fincham returned to his vehicle and pursued Pate for a short distance. Pate stopped his truck but would not comply with Agent Fincham's order to raise his hands and exit the truck. With the assistance of another officer, Agent Fincham was

able to remove Pate from the truck, restrain him, and secure the children. A subsequent search of Pate's truck revealed a .22-caliber rifle, a shotgun, and a muzzle loader in the cab of the truck, and various items associated with the manufacture of methamphetamine in the toolbox in the bed of the truck.

Pate was charged with being a felon in possession of a firearm (count one) and misdemeanor assault of a federal officer (count two). Pate pled guilty to both counts. At sentencing, the district court calculated Pate's advisory Guidelines range, applying a two-level increase for an offense involving three weapons, pursuant to U.S.S.G. § 2K2.1(b)(1), and applied a four-level increase for possession of a firearm in connection with another felony offense, pursuant to U.S.S.G. § 2K2.1(b)(6). These adjustments resulted in an advisory Guidelines range of 70 to 87 months. The district court sentenced Pate to concurrent terms of 70 months of imprisonment on count one and 12 months of imprisonment on count two, followed by concurrent terms of supervised release of three years and one year, respectively, and imposed a $3000 fine. This appeal followed.

## II.  DISCUSSION

On appeal, Pate challenges the district court's application of the two-level enhancement for possession of three or more firearms and the four-level enhancement for possessing a firearm in connection with another felony offense. "We review a district court's interpretation and application of the guidelines de novo and its factual findings regarding enhancements for clear error." United States v. Aguilar, 512 F.3d 485, 487 (8th Cir. 2008).

### A.  Two-Level Enhancement Pursuant to U.S.S.G. § 2K2.1(b)(1)
#### 1.  Muzzle Loader

For the first time on appeal, Pate argues a muzzle loader does not qualify as a firearm under 18 U.S.C. § 921(a)(3) because it falls under the antique firearm exception. See 18 U.S.C. § 921(a)(16). Thus, Pate contends he did not have the

requisite number of firearms to trigger the two-level enhancement under U.S.S.G. § 2K2.1(b)(1). The Government argues the antique firearm exception is an affirmative defense that Pate had the burden of proving at sentencing, and therefore Pate has waived the defense on appeal.

We review for plain error an argument not raised at sentencing. See United States v. Mink, 476 F.3d 558, 563 (8th Cir. 2007). "Under plain error review we will correct an error if it 'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Flying By, 511 F.3d 773, 778 (8th Cir. 2007) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). "Under plain-error review, the defendant has the burden to prove that there was (1) error, (2) that was plain, and (3) that affected substantial rights." United States v. Eagle, __ F.3d __, __, No. 07-1555, 2008 WL 281824, at *3 (8th Cir. Feb. 4, 2008).

Pursuant to U.S.S.G. § 2K2.1(b)(1), if an offense involves three to seven firearms, the base offense level should be increased by two levels. Under 18 U.S.C. § 921(a)(3), the term firearm is defined as follows:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

An antique firearm, as defined under § 921(a)(16)(c), includes "any muzzle loading rifle, muzzle loading shotgun, or muzzle loading pistol, which is designed to use black powder, or a black powder substitute, and which cannot use fixed ammunition." However, § 921(a)(16)(c) also provides that "the term 'antique firearm' shall not include any weapon which incorporates a firearm frame or receiver, any firearm which is converted into a muzzle loading weapon, or any muzzle loading weapon which can

-4-

be readily converted to fire fixed ammunition by replacing the barrel, bolt, breechblock, or any combination thereof."

When the antique firearm exception is raised as an affirmative defense, the defendant "bears the burden to produce evidence sufficient to raise a genuine dispute about whether the firearm is an antique. Only then does the government need to prove beyond a reasonable doubt that the firearm is not an antique firearm." United States v. Washington, 17 F.3d 230, 232 (8th Cir. 1994) (citing United States v. Smith, 981 F.2d 887, 891-92 (6th Cir. 1992) (holding "the 'antique firearms' exception is an affirmative defense which must be raised by a criminal defendant")); see United States v. Laroche, 723 F.2d 1541, 1543 (11th Cir. 1984) (holding "the antique weapons exception is in essence an affirmative defense that must be raised by the defendant before the burden shifts to the government to disprove its applicability"); United States v. Mayo, 705 F.2d 62, 75 (2d Cir. 1983) ("We find no indication in the language of the statute that Congress intended the government to prove in all criminal prosecutions under 18 U.S.C. § 922 that the illegal firearms transactions involved weapons that were not antiques."); see also United States v. Lawrence, 349 F.3d 109, 122 (3d Cir. 2003) (citing Laroche, Mayo, Smith, and Washington with approval and holding, based on the statutory language and the legislative history of § 921, "the exemption for antique firearms contained in § 921(a)(16) is an affirmative defense that must be raised by defendant and supported by some evidence before the government has to prove the contrary beyond a reasonable doubt").

Relying on United States v. Mickelson, 378 F.3d 810, 817 n.2 (8th Cir. 2004),[3] Pate argues a standard of review less stringent than plain error should apply in this case. In Mickelson, the government argued plain error review applied to defendant's severance challenge because the defendant did not renew his motion to sever at trial

---

[3]Although Pate did not provide a citation, the quotation on page 13 of Pate's initial brief, is from Mickelson, 378 F.3d at 817 n.2.

and thus failed to preserve the issue. Id. We held that rather than "adhering to a rigid preservation rule," we should examine two main concerns: "'(1) the appellate court's practical ability to determine whether the appellant knew of the error and consented to it; and (2) the unfairness of reversing the trial court on an issue that it did not have the opportunity to consider.'" Id. (quoting United States v. Westbrook, 896 F.2d 330, 337 (8th Cir. 1990)). We concluded the defendant had not waived the issue because (1) the defendant had not consented to the error, and (2) the district court considered the issue prior to trial and nothing regarding severance changed during trial. Id.

Applying the Mickelson analysis, Pate suggests he preserved the antique firearm exception argument because (1) he did not consent to the error that the three firearms in this case met the statutory firearm definition, and (2) the questions asked of law enforcement officers about the firearms provided the district court the opportunity to consider the issue. We disagree.

First, Pate's general objection that the muzzle loader *did not* constitute a firearm is distinguishable, if not wholly opposite, from Pate's new argument that the muzzle loader *did* constitute an *antique* firearm. Second, at sentencing, Agent Falls and Agent Fincham were asked whether, in their experiences, they ever found a muzzle loader used in connection with a drug offense. The agents responded they had not. Agent Falls qualified, however, a drug dealer would use "whatever weapon they could obtain or have available." While these questions related generally to the muzzle loader, they in no way touched upon the issue of whether the muzzle loader found in Pate's vehicle constituted an antique firearm.

We found nothing in the record to indicate the issue of the muzzle loader being an antique firearm was raised at any time prior to this appeal. Pate's pre-sentence investigation report (PSR) prepared in advance of sentencing lists the firearms seized on November 12, 2006, as "A .22 rifle, a shotgun, and a muzzle loading rifle long gun." Pate filed twenty objections to the PSR, however none of those objections

specifically argued the muzzle loader was an antique firearm. After a thorough review of the record, we conclude Pate failed to raise the affirmative defense that the muzzle loader was an antique firearm as defined by § 921(a)(16). Thus, the burden did not shift to the government to prove the contrary. We find no error on this issue, plain or otherwise.

### 2. Firearms Never Test Fired

Pate also challenges the two-level enhancement under U.S.S.G. § 2K2.1(b)(1), arguing the firearms were not test fired, therefore the district court erred by applying the enhancement. Pate's argument is foreclosed by our decision in United States v. Abdul-Aziz, 486 F.3d 471, 477 (8th Cir. 2007). In Abdul-Aziz, the defendant argued the rifle at issue had not been test fired, thus there was no proof it was in working condition. Id. A Federal Bureau of Investigation (FBI) special agent examined the firearm and testified "that the rifle was designed to expel a projectile through the use of an explosive and, to the best of his knowledge, was a functioning firearm." Id. We rejected the defendant's argument, noting § 921(a)(3) does not require the weapon to be operable in order to be considered a firearm. Id. (citing United States v. York, 830 F.2d 885, 891 (8th Cir. 1987)). We affirmed the application of the two-level enhancement under § 2K2.1(b)(1), concluding the agent's examination of the rifle and subsequent testimony constituted "some evidence that the rifle was functional even though it had not actually been test-fired." Id.

In the present case, three law enforcement officers involved with the November 12, 2006, investigation testified at sentencing on behalf of the government. FBI Special Agent Charles Falls (Agent Falls) testified that after Pate was subdued, the officers recovered three loaded firearms from the cab of Pate's truck. Two of the firearms were found on the passenger-side floorboard, and the other firearm was found behind the seat. Agent Falls testified that all three firearms were within easy reach of the driver's seat. Agent Fincham similarly testified that three loaded firearms – a shotgun, a rifle, and a muzzle loader – were found in the cab of Pate's truck, located

-7-

within easy reach of the driver's side. United States Forest Service Special Agent Michael Gaston (Agent Gaston) also provided testimony about the three loaded weapons. Agent Gaston explained the firearms had not been test fired, but in his experience, the purpose of having fully-loaded weapons is to be able to use them, and a person does not load a weapon that does not work. Pate submitted an affidavit following his arrest, which was admitted into evidence at the sentencing hearing. Therein, Pate admitted having the firearms in his truck but disclaimed ownership. Pate said he had been using the rifle for about one month to hunt squirrels. After listening to the testimony and arguments, the district court overruled Pate's objection and applied the two-level enhancement under § 2K2.1(b)(1), finding, by a preponderance of the evidence, all three weapons were loaded and could have been used. There is adequate evidence in the record to support the district court's finding. We find no error in the district court's application of the two-level enhancement for possessing three firearms.

**B. Possession of a Firearm in Connection with Another Felony Offense**

Pate next argues the district court erred in imposing the four-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(6), for possessing a firearm in connection with another felony offense. Pate asserts (1) the government failed to prove Pate possessed a firearm to protect himself or to otherwise facilitate a felony drug trafficking offense; (2) there was no relation between the weapons seized from the cab of the truck and the methamphetamine manufacturing paraphernalia found in the bed of the truck; and (3) the guns were sporting type guns and thus should not be considered to have been possessed in connection with the drug activity. "We review the factual finding of the use of a firearm in connection with the drug offense for clear error." United States v. Minnis, 489 F.3d 325, 332 (8th Cir. 2007), cert. denied, 128 S. Ct. 1097, 2008 WL 114228, 76 U.S.L.W. 3373 (U.S. Jan. 14, 2008) (No. 07-8027). "The enhancement must be imposed unless it is clearly improbable that [Pate] possessed the firearm in connection with another felony offense." United States v. Agee, 333 F.3d 864, 866 (8th Cir. 2003).

Under § 2K2.1(b)(6), "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense," the base offense level is to be increased by 4 levels. A firearm is used "in connection with" for purposes of § 2K2.1(b)(6) "if the firearm or ammunition facilitated, or had the potential of facilitating another felony offense." U.S.S.G. § 2K2.1(b)(6) cmt. note 14(A). "'Another felony offense', for purposes of subsection (b)(6), means any Federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." Id. cmt. note 14(C).

All three special agents provided consistent testimony regarding the descriptions and locations of the three firearms found in Pate's truck. They also testified that in their experiences, guns were consistent with drug-related crimes. In answer to the district court's question, Agent Falls testified a drug dealer's weapon of choice "would be whatever weapon they could obtain or have available." Agent Falls further testified that although in his own experience he had not seen a muzzle loader used in connection with a drug operation, he had seen shotguns used for that purpose and reiterated a drug dealer's choice of firearms depends on "what's available or what the individual can obtain." Agent Falls also stated a shotgun would not be used for squirrel hunting. Agent Gaston testified in his experience in working with the Drug Task Force, he had discovered shotguns and rifles similar to those found in Pate's truck used in connection with the manufacture of methamphetamine. Agent Fincham testified that when Pate realized he had been discovered by Agent Fincham, Pate tried to escape and reached for one of the loaded firearms. Agent Fincham said Pate continued reaching for the firearm after Agent Fincham ordered Pate to raise his hands. Agent Fincham feared Pate was going to kill him and shot Pate to prevent being shot himself. Pate admitted in his affidavit that the precursors found in the toolbox in the bed of his truck were for making methamphetamine and that he was in

the woods on November 12, 2006, to drop off the precursors in exchange for methamphetamine. Pate also admitted he knew the firearms were in the truck on November 12, 2006.

The district court found, based on Pate's affidavit, the testimony at sentencing, and the methamphetamine items found in Pate's truck, that although no drug offense charges were ever filed, Pate did possess the firearms in connection with the manufacture of methamphetamine and thus imposed the four-level increase pursuant to § 2K2.1(b)(6). The record clearly supports this finding. By Pate's own admission, he had the firearms in his truck, and he was in the woods for the sole purpose of executing a step in the manufacture of methamphetamine. Drug enforcement officers testified firearms are frequently used in the manufacture of methamphetamine. The proximity of the firearms to the methamphetamine precursor also suggests a connection between the two. We conclude it was not clearly improbable the firearms discovered in Pate's vehicle were used in connection with the manufacture of methamphetamine, and thus the district court's application of the four-level enhancement was proper. See Agee, 333 F.3d at 866.

## III.  CONCLUSION

For the reasons stated, we affirm the sentence imposed by the district court.

_____