**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 28, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

      No. 11-3255

TAURUS D. HOYLE,

      Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 2:10-CR-20056-CM-1)**

R. Bruce Kips, Shawnee, Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States
Attorney for the District of Kansas, with him on the brief), Topeka, Kansas, for Plaintiff-
Appellee.

Before **LUCERO**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

Defendant-Appellant Taurus D. Hoyle appeals his conviction for being a felon in

possession of a firearm, and also appeals his sentence under the Armed Career Criminal

Act ("ACCA") to 262 months' imprisonment. In the conviction challenge, Mr. Hoyle contends that the government offered insufficient evidence that he possessed a firearm, and that the charged possession affected interstate commerce. We reject Mr. Hoyle's arguments on this score, and **AFFIRM** his conviction.

In the sentencing challenge, Mr. Hoyle argues that two of the three prior convictions relied upon by the district court (both were Kansas state law convictions) do not qualify as predicate convictions for the ACCA's enhanced sentencing provisions. Specifically, Mr. Hoyle argues that the two Kansas convictions are not such qualifying predicates because the convictions no longer disqualify him from possessing firearms as a matter of state law. We agree that Mr. Hoyle's firearm possession rights were restored by operation of state law, thus precluding either of the two state convictions from qualifying as ACCA predicates. We therefore **VACATE** Mr. Hoyle's sentence, and **REMAND** to the district court for resentencing.

## I. BACKGROUND

*A. Summary of material trial testimony.*

*1. Tyda Hall*

Tyda Hall, a resident of Kansas City, Kansas, testified that she was socializing at the house of her neighbor, Alex Adams, on March 30, 2010. Mr. Hoyle, whom Ms. Hall identified in court, was on the front porch of Mr. Adams's home. Mr. Adams asked Mr.

2

Hoyle to leave, but Mr. Hoyle refused to do so. Ms. Hall heard the commotion and also asked Mr. Hoyle to leave. By this time, Mr. Hoyle had become agitated and was yelling at Ms. Hall. Ms. Hall went back inside Mr. Adams's home while Mr. Adams and others tried to keep Mr. Hoyle under control. Upon going back inside, Ms. Hall heard Mr. Adams say something about a gun. Ms. Hall turned around and saw that Mr. Hoyle possessed a silver revolver. At that point, Mr. Hoyle pointed the gun at Ms. Hall and threatened to shoot her. Subsequently, Ms. Hall called 911, and Mr. Hoyle fled. During the 911 call, Ms. Hall described the gun held by Mr. Hoyle as a silver revolver, and also described Mr. Hoyle's clothing. Upon the arrival of police officers, Ms. Hall indicated the direction of Mr. Hoyle's flight.

### 2. *Stacey Bradley*

Stacey Bradley is Ms. Hall's sister, and shares a residence with Ms. Hall. On the day in question, March 30, 2010, Ms. Bradley was in her own home (the one she shared with Ms. Hall) while Ms. Hall and Mr. Hoyle were at Mr. Adams's house. Ms. Bradley testified that she heard some of the commotion caused by Mr. Hoyle, and observed him waving a silver revolver around as he walked away from Mr. Adams's home.

3

*3. Officer Rodriguez*

Officer Ruben Rodriguez is a community police officer with the Kansas City Police Department ("KCPD"). Rodriguez responded to a dispatch call resulting from Ms. Hall's 911 call. The dispatcher reported Ms. Hall's description of the gun-toting individual. Not far from the location where Ms. Hall last saw Mr. Hoyle, Officer Rodriguez located an individual (later identified as Mr. Hoyle) matching the description provided by Ms. Hall. Although Officer Rodriguez did not see a gun in Mr. Hoyle's possession, when he tried to make contact with Mr. Hoyle, Hoyle ran away and Officer Rodriguez noticed that "it looked like [Mr. Hoyle] was holding something." Officer Rodriguez, joined by other police officers, pursued Mr. Hoyle through the neighborhood.

Another KCPD officer, Officer William Saunders, apprehended Mr. Hoyle and tackled him to the ground. After Mr. Hoyle was subdued, Officer Rodriguez saw that Mr. Hoyle's hands were scratched and had a small amount of blood on them. Officer Rodriguez did not find a gun on Mr. Hoyle's person.

*4. Officer Saunders*

Officer William Saunders testified that he searched the immediate vicinity shortly after he apprehended Mr. Hoyle. Under an automobile, Officer Saunders found a silver revolver. Officer Saunders took custody of the gun, which was loaded with live ammunition, and secured it. Officer Saunders explained that the firearm could be fired

4

when loaded with a round in the cylinder, but admitted that neither he nor any other officer ever test-fired the weapon.

### 5. *Detective Greeno*

Pat Greeno, a KCPD detective, testified that Mr. Hoyle made several incriminating statements during various interactions. First, during an initial interview at the Wyandotte County Jail (where Mr. Hoyle was initially held upon his arrest), Mr. Hoyle asked whether he would be prosecuted by state or federal authorities. According to Detective Greeno, Mr. Hoyle explained that he wanted to know that information because he was a felon caught with a gun, and a federal holding facility was where he was supposed to be.

Later, Detective Greeno obtained and executed a search warrant which allowed him to obtain a DNA sample from Mr. Hoyle. While Detective Greeno transported Mr. Hoyle to the United States Marshal's booking facility, Mr. Hoyle asked, "[C]an I plead guilty today?" As Detective Greeno recited the terms of the search warrant to Mr. Hoyle, Mr. Hoyle interrupted him and said: "I'm guilty of this, man. You don't need to go through all this." This statement was also witnessed by Agent Chris Concannon of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").

*6. Barbara Crim-Swanson*

Barbara Crim-Swanson is a forensic scientist employed by the Kansas Bureau of Investigation's scientific laboratory. She compared a sample of Mr. Hoyle's DNA (collected by Detective Greeno) to a sample of the blood found on the silver revolver. (The blood sample was drawn by Officer Ross Hatfield of the KCPD; Officer Hatfield testified about his collection of the blood sample, and that he did not find any fingerprints on the gun.) Ms. Crim-Swanson testified that the blood taken from the revolver matched Mr. Hoyle's DNA.

*7. Gordon Mallory*

Gordon Mallory, an ATF agent, testified about his investigation of the silver revolver at issue in this case. He explained that he typically determined a weapon's place of manufacture by researching periodicals, magazines, and an internal law enforcement database. Agent Mallory testified that, based on his research in this case and his expertise, he believed the silver revolver found near Mr. Hoyle was manufactured by Smith & Wesson in Springfield, Massachusetts in either 1980 or 1981.

## II. THE CONVICTION CHALLENGE

*A. Scope of Mr. Hoyle's challenge to the sufficiency of the evidence.*

Mr. Hoyle was charged with and tried for a violation of 18 U.S.C. § 922(g)(1), which makes it unlawful for any convicted felon to "possess in or affecting commerce, any firearm or ammunition." When trying a defendant for a violation of § 922(g)(1), the government bears the burden of proving the following beyond a reasonable doubt: "(1) that the defendant was previously convicted of a felony; (2) that the defendant thereafter knowingly possessed a firearm or ammunition; and (3) that the possession was in or affecting interstate commerce." *United States v. Colonna*, 360 F.3d 1169, 1178 (10th Cir. 2004).

Mr. Hoyle challenges the sufficiency of the evidence offered at trial, claiming that the government failed to meet its burden of proof on the latter two elements described above. The challenge as to the second element — knowing possession of a firearm — actually contains two separate strands of argument. First, Mr. Hoyle argues that the government presented insufficient evidence that Mr. Hoyle himself actually possessed the gun presented as evidence at trial; and second, he argues that the gun was not a "firearm" as that term is defined in the relevant statute. As to the third element of the crime, Mr. Hoyle argues that the government offered insufficient evidence that the charged possession was in or affecting interstate commerce.

7

*B. Standard of review when considering the sufficiency of the evidence.*

"In reviewing the sufficiency of the evidence to support a conviction or a denial of a motion for judgment of acquittal, we review the record de novo to determine whether, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty of the crime beyond a reasonable doubt." *Colonna*, 360 F.3d at 1178.

*C. Possession of the gun by Mr. Hoyle.*

Mr. Hoyle argues that the government offered insufficient evidence that Mr. Hoyle ever possessed the gun found by Officer Saunders. In support of his claim, Hoyle identifies six facts: (1) no police officer saw him with a firearm; (2) the police did not elicit tape-recorded or written statements from either Ms. Hall or Ms. Bradley; (3) Ms. Hall's and Ms. Bradley's identifications of Mr. Hoyle in and out of court were tainted because they were shown a photo array at the same time; (4) Officer Saunders did not see any blood on the gun when he retrieved it from underneath the automobile; (5) no pictures of the crime scene showed blood on the gun or on Mr. Hoyle's hand; and (6) Mr. Hoyle's fingerprints were not found on the gun.

The first three facts listed amount to challenges to the credibility of the testimony of Ms. Hall and Ms. Bradley, and thus are a request for us to reweigh the evidence on

8

appeal.  We do not do this.   With the fourth, fifth, and sixth facts, Mr. Hoyle attempts to show gaps in forensic evidence.  But these facts do nothing to undermine the convincing DNA evidence offered by the government.  Mr. Hoyle has not challenged the reliability of that evidence, which tends to show that the gun found by Officer Saunders was in Mr. Hoyle's possession before he was arrested.  Accordingly, we decline to overturn the jury's conclusion that Mr. Hoyle possessed the silver revolver found by Officer Saunders.

*D. Possession of a "firearm."*

For purposes of the felon-in-possession statute, the term "firearm" is defined as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."  18 U.S.C. § 921(a)(3)(A).

Mr. Hoyle argues that the government's evidence was insufficient to prove that the silver revolver in question in this case was a "firearm" as the term is defined in the relevant statute.  Specifically, he points to the absence of any testimony that the revolver was ever test-fired by any police officer.  The government, on the other hand, points out that Officer Saunders's explanation that the revolver could be fired when loaded with live ammunition is sufficient to support the conclusion that the weapon was designed to expel a projectile by the action of an explosive.

9

In *United States v. Smith*, 472 F.3d 752, 754 (10th Cir. 2006), we upheld a conviction under § 922(g)(1) where the government presented evidence that weapons found in the defendant's possession were "fully intact, loaded, and ready to be fired" and a lay witness testified that she had seen the defendant fire some of the weapons two weeks before the defendant's arrest. Mr. Hoyle argues that *Smith* stands for the proposition that actual observations of a weapon's operability are required to sustain a § 922(g)(1) conviction. We disagree.

A weapon need not be operable in order to qualify as a "firearm" under § 921(a)(3)(A). As long as the weapon is "designed to" expel a projectile due to the action of an explosive, it qualifies. Our court has not expressly stated the bare minimum evidence that is required to make such a showing. It is true that in previous cases where we upheld convictions against sufficiency challenges resembling the one brought by Mr. Hoyle, the government had presented evidence that a weapon was test-fired. *See United States v. Cox*, 934 F.2d 1114, 1121 (10th Cir. 1991) (rejecting sufficiency challenge where "an Alcohol, Tobacco and Firearms agent testified that the weapons had been test fired, were operable and that, in his opinion, they were firearms as defined by § 921(a)(3)"); *United States v. Allen*, 235 F.3d 482, 492-93 (10th Cir. 2000) (upholding conviction where agent test-fired weapon with blank ammunition).

Our conclusions in those cases, however, do not mean that evidence of test-firing is *required* in order to show that a weapon is actually a firearm. Officer Saunders had

10

twenty-five years of law enforcement experience when he testified at trial about the gun

he found near Mr. Hoyle. Given Officer Saunders's extensive experience, a rational juror

could rely on his ability to establish whether a gun "may readily be converted to expel a

projectile by the action of an explosive." To be sure, evidence of test-firing may be more

persuasive than mere observations about a gun's appearance. But nothing in the text of

§ 921(a)(3)(A) suggests that test-firing (or lay observations of live-firing) is *required*;

indeed, the text suggests exactly the opposite by including in the definition of "firearm" a

weapon which is "designed" to fire live ammunition.[1]

---

[1] Mr. Hoyle points us to no case suggesting that evidence like that offered in this case is insufficient to establish that a weapon is a "firearm" under § 921(a)(3); indeed, courts routinely hold that similar evidence is adequate. *See*, e.g.*, United States v. Abdul-Aziz*, 486 F.3d 471, 477 (8th Cir. 2007) (upholding conviction where an agent testified that "the rifle was designed to expel a projectile through the use of an explosive and, to the best of his knowledge, was a functioning firearm"); *United States v. Redd*, 161 F.3d 793, 797 (4th Cir. 1998) ("[E]yewitness testimony is sufficient to prove that a person used a firearm."); *United States v. Castillo*, 924 F.2d 1227, 1230 (2d Cir. 1991) (evidence sufficient to prove that unrecovered gun was "firearm" where witness was a police officer who had "extensive training and familiarity in the identification and use of firearms"); *see also United States v. Cruz-Diaz*, 550 F.3d 169, 173 (1st Cir. 2008) (declining to overturn conviction where the government only offered descriptive testimony by lay witnesses that they perceived guns used by the defendant to be real); *United States v. Beverly*, 99 F.3d 570, 572-73 (3d Cir. 1996) (descriptive testimony by lay witness sufficient to allow jury to infer that weapon was a "firearm"); *Parker v. United States*, 801 F.2d 1382, 1384 (D.C. Cir. 1986) (same).

11

*E. Possession in or affecting interstate commerce.*

"Section 922(g) requires that the firearm be possessed 'in or affecting commerce.'" *United States v. Williams*, 403 F.3d 1188, 1195 (10th Cir. 2005) (quoting 18 U.S.C. § 922(g)). The Supreme Court has affirmed the Fourth Circuit's holding that: "[T]he interstate commerce nexus requirement of the possession offense was satisfied by proof that the firearm [defendant] possessed had previously traveled in interstate commerce." *Scarborough v. United States*, 431 U.S. 563, 566 (1977).

Mr. Hoyle argues that the testimony of Agent Gordon Mallory was insufficient to prove this element of the crime. Specifically, he argues that "there was no testimony as to what [Agent Mallory] researched" in concluding that the silver revolver — which was undisputedly located in Kansas when Mr. Hoyle was arrested — had been manufactured in Massachusetts years earlier.

We reject Mr. Hoyle's argument. For one thing, in addition to Agent Mallory's testimony about the gun's nexus with interstate commerce, Detective Greeno testified that he ran a trace on the gun which revealed it had been shipped from its manufacturer to the Massachusetts Institute of Technology in 1981. Further, a rational juror could infer from Agent Mallory's testimony that his typical research techniques — looking at periodicals, magazines, and internal ATF databases — were applied in this case. Of course, a more specific statement of the actual research in this case might have resulted in more persuasive evidence. But Mr. Hoyle did not and does not challenge the

12

admissibility of Agent Mallory's opinion on the manufacture of the specific gun involved in this case; indeed, Mr. Hoyle declined to cross-examine Agent Mallory at all.

Agent Mallory's testimony, which for purposes of this appeal must be taken as true, showed that the gun was manufactured in Springfield, Massachusetts, and that in any event the manufacturer had *never* manufactured any guns in the state of Kansas. Furthermore, Detective Greeno's trace of this weapon, which showed it having been sold to the Massachusetts Institute of Technology in the early 1980s, tends to confirm Agent Mallory's analysis. If believed, the "interstate nexus" testimony, taken as a whole, would allow a rational juror to infer that the gun in this case had "previously traveled in interstate commerce." *Id.* at 566-67.

## III. THE SENTENCE CHALLENGE

### *A. ACCA background.*

Mr. Hoyle claims that the district court erred by classifying him as an armed career criminal pursuant to the ACCA, which is codified at 18 U.S.C. § 924(e). Section 924(e) applies to defendants who violate § 922(g) by having firearms or ammunition when they have at least three previous convictions for crimes classified either as "violent felon[ies]" or "serious drug offense[s]." We generally refer to one whose criminal history meets the requirements of § 924(e) as an "armed career criminal."

13

If the district court concludes that a defendant is an armed career criminal, he is automatically subject to a 15-year mandatory minimum prison sentence. In addition, the Sentencing Guidelines also single out armed career criminals for an enhanced Guidelines sentencing range. Specifically, armed career criminals have their offense level elevated, regardless of what the offense level would have been in the absence of armed career criminal status. U.S.S.G. § 4B1.4. When a defendant's § 922(g) charge is associated with the commission of a crime of violence (as Mr. Hoyle's was), the base offense level is 34. *Id.* § 4B1.4(b)(2).

The district court concluded that three of Mr. Hoyle's prior convictions qualified as ACCA predicates: (1) his 1994 Kansas state law conviction for aggravated assault in Wyandotte County (Kansas) District Court; (2) his 1994 Kansas state law conviction for aggravated escape from custody, also in Wyandotte County (Kansas) District Court; and (3) his 1995 federal conviction for possessing five or more grams of cocaine base in violation of 21 U.S.C. § 844. Thus, Mr. Hoyle was sentenced as an armed career criminal. Mr. Hoyle's undisputed criminal history category was VI. This criminal history status, coupled with an offense level of 34, resulted in an advisory Guidelines

14

range of 262-327 months' imprisonment.  The district court ultimately sentenced Mr.

Hoyle to 262 months' imprisonment.[2]

### B. Mr. Hoyle's armed career criminal status.

We turn to Mr. Hoyle's argument that the district court erroneously counted two

state convictions as violent felonies under the ACCA.  Mr. Hoyle argues that these

convictions do not qualify as ACCA predicates because Kansas law restored to him the

civil rights that he lost as a result of the convictions.

A prior conviction is not a violent felony under the ACCA if a defendant has civil

rights restored to him upon or after his release from imprisonment.

18 U.S.C. § 921(a)(20).  In the Tenth Circuit, we look to the whole of state law, rather

than only at a certificate of restoration of civil rights upon release from parole or

imprisonment, in determining whether a defendant's civil rights have been restored.

*United States v. Baker*, 508 F.3d 1321, 1328 (10th Cir. 2007).  The ACCA's civil rights

restoration exception does not apply if the defendant does not have his right to ship,

transport, possess, or receive firearms restored.  18 U.S.C. § 921(a)(20).  Mr. Hoyle

argues that his two Kansas state convictions do not count as ACCA predicates because

---

[2] If Mr. Hoyle was not an armed career criminal, his statutory *maximum* sentence would have been 120 months' imprisonment.  *See* 18 U.S.C. § 924(a)(2).

15

his civil rights — including his right to possess firearms — were reinstated by operation of Kansas law by the time he committed the § 922(g) offense for which he was sentenced as an armed career criminal.

By the time Mr. Hoyle violated 18 U.S.C. § 922(g), he had most of his civil rights restored to him by operation of Kansas law.[3] *See* Kan. Stat. Ann. § 27-3722 (2010). This general restoration of civil rights, however, did *not* restore his right to possess firearms. The firearm possession right was governed by Kan. Stat. Ann. § 21-4204 (2010). The parties hotly dispute which precise provision of Kan. Stat. Ann. § 21-4204 applied to Mr. Hoyle. Mr. Hoyle argues that he was subject to Kan. Stat. Ann. § 21-4204(a)(4) (2010), which imposes a ten-year ban on firearms possession, with the clock running from the date of release from imprisonment or parole. The government, on the other hand, argues

---

[3] Kansas overhauled its criminal code, including its civil rights restoration laws, in 2011, but the parties agree that the laws in effect at the time the defendant committed the § 922(g) offense — *i.e.* as of March 30, 2010 — are what govern our interpretation of the ACCA in this case. *See State v. Lueker*, 956 P.2d 681 (Kan. 1998) (under Kansas law, firearms possession rights are determined as of the date the firearm was allegedly illegally possessed).

This point is underscored by *ex post facto* concerns. Applying Kansas's amended laws to the disfavor of Mr. Hoyle would almost surely constitute applying a more severe substantive criminal law enacted *after* commission of the § 922(g) offense, running afoul of the Constitution's ex post facto clauses, U.S. Const. art. I, § 9, cl. 3 and art. I, § 10, cl. 1.

16

that Mr. Hoyle was subject to Kan. Stat. Ann. § 21-4204(a)(2) (2010), which imposes a lifetime ban on firearms possession.

### 1. *The district court's ruling.*

The district court did not rule on either of the parties' contentions that are before us on appeal. Instead, the district court held that Mr. Hoyle's firearms ban — regardless of whether it lasted only ten years — did not start until 2004, when Mr. Hoyle was released from *federal* custody.

Upon Mr. Hoyle's release from Kansas's custody in 1998 on his state law convictions, he was immediately transferred into federal custody so that he could serve the time remaining on a separate federal sentence, which was running concurrently with his state sentence. Mr. Hoyle was not released from federal custody until 2004. Thus, the district court reasoned that Mr. Hoyle's firearms ban, even if it was only ten years in duration, would not expire until 2014. The government confesses that this is an erroneous understanding of Kansas' restoration statute. Aplee. Brief at 37. Although we are not bound to accept the government's confession of error,[4] upon undertaking our own

---

[4] In *Young v. United States*, 315 U.S. 257, 258-59 (1942), the Supreme Court explained that courts have a duty to examine whether there has been an error of law by a lower court, even when error is confessed by the government:

(continued…)

17

analysis of the statutory scheme, we agree that the district court erred in deciding that the clock on the firearms ban resulting from the state law convictions began to run in 2004.

Let us assume *arguendo* that Mr. Hoyle was, as he contends, subject to a ten-year firearms ban. Under Kan. Stat. Ann. § 21-4204(a)(4) (2010), that ban applied to any individual who, like Mr. Hoyle, was convicted of a felony pursuant to Kan. Stat. Ann. § 21-3410 (2010). The ban begins to run when the felon is "released from imprisonment for *such felony*." (emphasis added). We cannot square that statutory language with the district court's conclusion that the ten-year ban begins to run only after the defendant is released from imprisonment entirely.

---

(…continued)

> The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. . . . Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties. . . .

*See also Orloff v. Willoughby*, 345 U.S. 83, 88 (1953) ("This Court, of course, is not bound to accept the Government's concession that the courts below erred on a question of law.").

18

Indeed, a recent decision of the Kansas Supreme Court confirms our understanding. In *State v. LaGrange*, that court noted the term 'such felony' "identifies both the listed Kansas felonies and the substantially similar out-of-state felonies." --- P.3d ---, 2012 WL 2498869, at \*5 (Kan. June 29, 2012). The Kansas Court went on to state that the clear intent of the Kansas legislature is that the ten-year ban "commences either on the date of conviction of the applicable felony or on the date of release from prison for the *applicable felony*," whichever is more favorable to the government. *Id.* (emphasis added). Thus, the ban started once Mr. Hoyle served his entire *state* sentence from which the firearms ban resulted in the first place. The concurrent federal sentence was on a federal drug charge — a charge which the federal government (in this § 922(g) prosecution) does not argue is "substantially similar" to any crimes listed in the portion of the Kansas statute imposing a ten-year firearm ban — and thus has no bearing on the start date of the firearms ban resulting from the state conviction.

We conclude that the district court erred in ruling that the firearms ban resulting from Mr. Hoyle's Kansas convictions would not begin to run until 2004. Instead, we agree with the parties that the ban that resulted from the state convictions began to operate in 1998, upon Hoyle's release from state prison for both of his state felonies.[5]

---

[5] Under Kan. Stat. Ann. § 21-4204(a)(3) (2010), Mr. Hoyle's aggravated escape conviction also resulted in a firearms ban. This ban, however, was only five years in

(continued…)

19

*2. Was Mr. Hoyle subject to a ten-year firearms ban, or a lifetime firearms ban?*

Turning back to the issue disputed by the parties, we must determine whether Mr. Hoyle was subject to the ten-year firearms ban imposed by Kan. Stat. Ann. § 21-4204(a)(4) (2010), or to the lifetime ban imposed by Kan. Stat. Ann. § 21-4204(a)(2) (2010). Subsection (a)(4) imposes a ten-year ban on anyone who has been convicted of any one of a variety of enumerated felonies, including Kan. Stat. Ann. § 21-3410 (2010), which is titled "Aggravated assault." But (a)(4)'s applicability is further limited: It only applies where the felon "was found not to have been in possession of a firearm at the time of the commission of the [predicate] offense." Subsection (a)(2), on the other hand, imposes a lifetime firearms ban on any person convicted for a "person felony" and who "was found to have been in possession of a firearm at the time of the commission of the [person felony] offense."

Mr. Hoyle does not dispute that his § 21-3410 conviction was a "person felony" (being an assault on an individual), and thus satisfies the first precondition to a lifetime

---

(…continued)

duration. The aggravated assault ban, as we have said, was either a ten-year or lifetime ban. Because Mr. Hoyle was released from prison at the same time for both of these felonies, we only discuss the ban that resulted from the aggravated assault conviction, which, under both parties' interpretation of the relevant laws, expired after the ban resulting from the aggravated escape conviction.

20

ban. However, Mr. Hoyle stridently contends that his § 21-3410 conviction did not satisfy the second precondition of a lifetime ban — having been found to be in possession of a firearm when he committed the aggravated assault. Whether Mr. Hoyle was found to be in such possession turns on statements made by *state* prosecutors at a plea hearing eighteen years ago, in 1994.

Mr. Hoyle was convicted under Kan. Stat. Ann. § 24-3410, which is titled "Aggravated assault," in 1994, after entering a *nolo contendere* plea. The charging document in that case alleged that Mr. Hoyle and another individual "did unlawfully, feloniously and intentionally place another . . . in reasonable apprehension of immediate bodily harm, committed with a deadly weapon, in violation of Kan. Stat. Ann. § 21-3410." During the plea hearing on that charge, which took place in 1994, the state's attorney, when asked whether there was a plea agreement, stated:

> *Yes, there is, Your Honor.* In [this aggravated assault case] the defendant is charged on a four-count information. The court has previously indicated pursuant to plea negotiations in that case, the State will dismiss counts one, two and four. In return, the defendant will plead nolo contendere to count three. That count *presently charges* him with one count of aggravated assault with a gun. *Pursuant to plea negotiations, the State will take out the gun.*

Aplee. Brief, Attach. C, at 5 (Tr. of Plea Hr'g, Case Nos. 94 CR 73A, 94 CR 797, Wyandotte County Dist. Ct., Oct. 25, 1994) (emphasis added).

Given the prosecutor's clear statement to the court, quoted above, we conclude that Mr. Hoyle was *not* found in possession of a gun at the time he committed the

21

aggravated assault.  The government claims that a subsequent factual proffer at that same

plea hearing undermines the state prosecutor's clear statement that "*the State will take out*

*the gun*."[6]  *Id.* (emphasis added).  We reject this argument because the state prosecutor's

initial statement to the court was clear and unambiguous, and was based on a promise that

must be fulfilled to maintain the integrity of the plea.[7]  The gun, according to the state

---

[6] At the plea hearing, the court later asked the state's attorney what evidence would be offered in support of the charge.  The state's attorney responded:

> Judge, in that case if we were to proceed to trial, our evidence would show that on January 11th, 1994 that [victim] Leo Vaughn was at his home . . . that around 6:30 that night, he had went outside to start his car.  He started it and went back inside, that upon going back inside, he heard his car engine race.  He came back outside and saw two black males in his car taking his car.  Those two black males would be the defendant, Taurus Hoyle, and Tyree Cole, and that they went down the street.  [Mr. Vaughn] gave chase.  As he was chasing them down the street, Taurus Hoyle leaned out the passenger window and fired a shot at him placing [Mr. Vaughn] in immediate apprehension of bodily harm.

Aplee. Brief, Attach. C, at 8 (Tr. of Plea Hr'g, Case Nos. 94 CR 73A, 94 CR 797, Wyandotte County Dist. Ct., Oct. 25, 1994).  The court then asked Mr. Hoyle whether those were the facts that he was not disputing, and Mr. Hoyle replied, "Yes."  *Id.* at 9.

[7] "Where a plea is predicated in any significant degree on a promise or agreement, *such promise or agreement must be fulfilled to maintain the integrity of the plea.*" *United States v. Greenwood*, 812 F.2d 632, 637 (10th Cir. 1987) (quoting *United States v. Reardon*, 787 F.2d 512, 516 (10th Cir. 1986)) (emphasis added).

In accordance with this important principle that plea agreements must be honored scrupulously, we decline to allow the prosecutor's later statements to override the terms of the plea deal, whereby the gun was *taken out*.  Thus, the mix of facts here, taken

(continued…)

prosecutor's statement, was not part of the equation. And the aggravated assault charge at issue required the use of a "deadly weapon" — *not* specifically a gun or firearm. Therefore, we conclude that Mr. Hoyle was not found in possession of a gun at the time he committed the aggravated assault, and consequently was subject to a ten-year firearms ban as a result of the conviction for that offense. As to the aggravated assault offense, then, Mr. Hoyle's civil rights were restored by operation of Kansas law in 2008 — in other words, before he committed the § 922(g)(1) offense in 2010.

Mr. Hoyle's conviction for a *federal* drug offense in 1995 also had a separate effect on his entitlement to possess firearms as a matter of Kansas law. Under Kan. Stat. Ann. § 21-4204(a)(3) (2010), Mr. Hoyle's 1995 federal conviction subjected him to a five-year Kansas firearms ban, the clock on which began to run in 2004, when he was released from federal prison. Thus, this five-year ban expired in 2009 — *i.e.* prior to commission of Mr. Hoyle's § 922(g)(1) offense in 2010.

As a result, Mr. Hoyle had all of his civil rights restored by operation of Kansas law in 2009 — in other words, before he committed the § 922(g)(1) offense — and the two Kansas offenses counted by the district court as ACCA predicates should not have been so counted. Therefore, Mr. Hoyle did not have the requisite three ACCA prior

_____

(…continued)

correctly, did *not* include the gun, which, by the plea agreement, was taken out of the aggravated assault charge.

23

convictions, and he must be resentenced without applying either the statutory ACCA provisions or the guidelines provisions implicated by ACCA status.[8]

## IV. CONCLUSION

Mr. Hoyle's conviction is **AFFIRMED**.  His sentence, however, is **VACATED**, and this case is **REMANDED** to the trial court for resentencing consistent with this opinion.

---

[8] In light of our holding that neither of Mr. Hoyle's state law convictions qualified as an ACCA predicate conviction, we do not address either of Mr. Hoyle's two alternative arguments.

24