**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 13, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

TAURUS D. HOYLE,

     Defendant - Appellant.

No. 13-3180

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 2:10-CR-20056-CM-1)**

---

R. Bruce Kips, Shawnee, Kansas, for Defendant - Appellant.

James Brown, Assistant United States Attorney, (and Barry R. Grissom, United States Attorney, on the brief), Topeka, Kansas, for Plaintiff - Appellee.

---

Before **KELLY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendant-Appellant Taurus D. Hoyle appeals from the remand proceedings of his prior appeal. In United States v. Hoyle (Hoyle I), 697 F.3d 1158 (10th Cir. 2012), this court affirmed Mr. Hoyle's conviction of 18 U.S.C. § 922(g)(1) but remanded for proper sentencing. Mr. Hoyle appeals again, this

time challenging the district court's denial of his motion for a new trial on remand and consideration of prior state convictions at resentencing. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

The facts underlying Mr. Hoyle's conviction are detailed in Hoyle I, 697 F.3d at 1161-63. Briefly, Mr. Hoyle was charged with violating 18 U.S.C. § 922(g)(1), which makes it unlawful for a convicted felon to "possess in or affecting commerce, any firearm or ammunition." Id. at 1162-63. The charge came after an incident where Mr. Hoyle pointed a gun at Tyda Hall and threatened to shoot. Id. at 1161. Ms. Hall called 911, and Mr. Hoyle fled. Id. During the 911 call, Ms. Hall described the gun as a silver revolver. Id. Officer Ruben Rodriguez located Mr. Hoyle and attempted to make contact. Id. at 1161-62. Mr. Hoyle fled, and Officer Rodriguez noticed that it looked like Mr. Hoyle was holding something. Id. at 1162. Officers eventually apprehended Mr. Hoyle, and Officer Rodriguez saw that Mr. Hoyle's hands were scratched and dotted with blood. Id. No gun was found on Mr. Hoyle's person; however, Officer William Saunders searched the immediate area and found a silver revolver under an automobile. Id. Blood was found on the revolver—blood that a DNA test showed to be Mr. Hoyle's. Id.

Mr. Hoyle made several incriminating statements after arrest. First, in an

interview with Detective Pat Greeno at Wyandotte County Jail, Mr. Hoyle asked whether he would be prosecuted by state or federal authorities; he wanted to know because he was a felon caught with a gun, and he should be in a federal holding facility. Id. Later, when Detective Greeno was transporting Mr. Hoyle to the United States Marshal's booking facility, Mr. Hoyle asked, "[C]an I plead guilty today?" Id. And when Detective Greeno was reading Mr. Hoyle the terms of a search warrant, Mr. Hoyle interrupted with, "I'm guilty of this, man. You don't need to go through all this." Id.

On this record, we rejected Mr. Hoyle's insufficient-evidence argument and affirmed his conviction. Id. at 1163, 1170. However, we held that his two prior Kansas convictions did "not qualify as predicate convictions for the [Armed Career Criminal Act's] enhanced sentencing provisions" because his civil rights had been restored under Kansas law. Id. at 1161, 1170. We therefore vacated his sentence and remanded "for resentencing consistent with this opinion." Id. at 1170.

On remand, Mr. Hoyle did not content himself with challenging his sentence; rather, he again challenged his conviction, this time arguing that the government suppressed evidence he could have used to impeach various witnesses. Aplt. Br. 4; Aplee. Br. 8. The district court denied Mr. Hoyle's motion for a new trial and proceeded to resentencing. Aplt. Br. 4.

In preparation for resentencing, the probation office prepared a presentence

investigation report (PSR) using the November 1, 2012 edition of the Sentencing Guidelines (U.S.S.G.). 3 R. 4-29. The PSR took into account Mr. Hoyle's two prior felony convictions—a 1994 Kansas conviction for aggravated assault and a 1994 Kansas conviction for aggravated escape from custody. Id. at 8, 11, 13. Given these prior felonies, the PSR arrived at a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) and assessed each conviction three criminal history points under § 4A1.1(a). Id. at 8, 16. This resulted in a criminal history category of VI. Id. at 16. The PSR also added four offense levels under § 2K2.1(b)(6)(B) because Mr. Hoyle "used or possessed the firearm" in connection with the Kansas felony of "criminal threat." Id. at 8.

Mr. Hoyle objected. He argued that, because his civil rights had been restored, his two state felony convictions could not be used to either enhance his base offense level under § 2K2.1(a)(2) or assess criminal history points under § 4A1.1(a). Id. at 26, 28. He also objected to the four-level increase for committing "criminal threat," arguing that Ms. Hall, who testified at trial that Mr. Hoyle pointed his revolver at her and threatened to shoot, was not a credible witness. Id. at 27-28.

The district court overruled Mr. Hoyle's objections. 2 R. 41-44. The court adopted the PSR's total offense level of 28 and criminal history category VI, and noted that the guidelines range was 140 to 175 months. Id. at 44. However, because the statutory maximum sentence was 120 months, id. at 44-45, the court

sentenced Mr. Hoyle to 120 months' imprisonment followed by three years' supervised release, 1 R. 78-79.

## Discussion

In this appeal, Mr. Hoyle argues that, on remand of Hoyle I, the district court erred by (1) denying him a new trial based on violations of Brady v. Maryland, 373 U.S. 83 (1963); (2) using his two state convictions—to which his civil rights had been restored—to (a) enhance his base offense level under U.S.S.G. § 2K2.1 and (b) assess criminal history points under § 4A1.1; and (3) finding that he used or possessed the revolver in connection with the Kansas felony "criminal threat." Aplt. Br. ii, 23.

### 1. New Trial for Brady Violations

We review a Brady claim asserted in a Rule 33 motion for a new trial de novo, reviewing any factual findings for clear error. United States v. Torres, 569 F.3d 1277, 1281 (10th Cir. 2009). Mr. Hoyle alleges that, after our remand in Hoyle I, his counsel discovered three Brady violations that occurred during his trial. Aplt. Br. 6. First, he argues the government failed to disclose a disciplinary letter received by Officer Saunders, and this impeachment evidence creates "a reasonable probability that the jury might not have believed [Officer Saunders's] testimony that he found the firearm underneath an automobile in the area where [Mr. Hoyle] was arrested." Id. at 6, 11. Second, Mr. Hoyle alleges that the

government failed to disclose a disciplinary letter received by Officer

Palmerin—whom the government did not call as a witness—and with this

evidence he "could have called Palmerin as a witness and questioned his

credibility" regarding a police report.  Id. at 6, 12.  Finally, he alleges the

government failed to disclose that Tyda Hall had a Kansas City, Kansas

conviction of misdemeanor theft.  Id. at 6.  Although there is no reason to believe

that the government knew about Ms. Hall's conviction before trial, he argues that

"the Government should or could have learned about" it before then.  Id. at 13.

We reject Mr. Hoyle's arguments that the government suppressed material

impeachment evidence at his trial.[1]  First, the district court reviewed Officer

Saunders's disciplinary letter in camera and found that the letter did not relate to

"truthfulness" or "honesty."  1 R. 56.  Mr. Hoyle does not challenge this finding

as clearly erroneous, see Aplt. Br. 10-12, so the issue is waived, Silverton

---

[1]  The government raises the possibility that the district court lacked
jurisdiction to consider Mr. Hoyle's motion for a new trial given our limited
remand for "resentencing" only.  Aplee. Br. 1 n.1.  The "mandate rule"
"requir[es] trial court conformity with the appellate court's terms of remand."
United States v. West, 646 F.3d 745, 748 (10th Cir. 2011).  "[T]he scope of the
mandate on remand in the Tenth Circuit is carved out by exclusion: unless the
district court's discretion is specifically cabined, it may exercise discretion on
what may be heard."  Id. at 749.  In addition to a mandate from this court,
however, Rule 33 provides a district court with an independent jurisdictional
basis to consider post-remand motions for a new trial.  See United States v. Ross,
372 F.3d 1097, 1105 (9th Cir. 2004).  Because Mr. Hoyle's motion was based on
newly discovered evidence and filed within three years after his guilty verdict,
see Fed. R. Crim. P. 33(b)(1), the district court had jurisdiction to consider it on
remand, and it is properly before this court.

Snowmobile Club v. United States Forest Serv., 433 F.3d 772, 783 (10th Cir. 2006). Second, Mr. Hoyle neither presented the content of Officer Palmerin's disciplinary letter to the district court, 1 R. 55, nor placed it in the appellate record. Mr. Hoyle has thus failed to meet his burden of establishing the existence of favorable, material evidence rather than hinting at its suspected existence. See United States v. Erickson, 561 F.3d 1150, 1163 (10th Cir. 2009). Finally, the district court found that the government did not suppress knowledge of Tyda Hall's conviction because the government did not know of that conviction. 1 R. 54-55. This finding is not clearly erroneous. Moreover, Mr. Hoyle's suggestion that the government "should or could have" learned of this conviction highlights that this evidence was not in the "possession or control of the government," Erickson, 561 F.3d at 1163, and Mr. Hoyle does not allege that the government kept itself intentionally ignorant of Ms. Hall's conviction, see Aplt. Br. 13-14. The district court properly denied Mr. Hoyle's motion for a new trial.

2.    Prior State Convictions under Sentencing Guidelines

We review the district court's interpretation of the sentencing guidelines de novo. United States v. Hodge, 721 F.3d 1279, 1280 (10th Cir. 2013). In this appeal, Mr. Hoyle argues that the sentencing guidelines' use of the term "imprisonment for a term exceeding one year" conflicts with the use of that term in statutes. Aplt. Br. 14, 18. Specifically, he argues U.S.S.G. § 2K2.1(a)(2)'s definition of "felony conviction" (i.e., a conviction "punishable by death or

imprisonment for a term exceeding one year"), and § 4A1.1(a)'s definition of "prior sentence of imprisonment exceeding one year and one month," conflict with 18 U.S.C. § 921(a)(20)'s definition of "crime punishable by imprisonment for a term exceeding one year." Id. The latter statute expressly excludes from that definition "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored." 18 U.S.C. § 921(a)(20). Because the sentencing guidelines nonetheless take such convictions into consideration, Mr. Hoyle argues the sentencing guidelines impermissibly deviate from the statute.

We must first determine whether § 921(a)(20) governs or controls the use of felony convictions under the sentencing guidelines as Mr. Hoyle contends. Aplt. Br. 16-17. Of course, Congress delegated to the Sentencing Commission significant discretion in formulating federal sentencing guidelines. United States v. LaBonte, 520 U.S. 751, 757 (1997). That discretion is not unbounded, however, and the guidelines must follow the "specific directives of Congress." Id. Congress "imposed upon the Commission a variety of specific requirements." Id. at 753 (citing 28 U.S.C. §§ 994(b)-(n)). To determine whether a statute constitutes a specific directive or requirement that limits the Commission's discretion, we must turn to the statutory language. See id. at 757. If the guidelines conflict with a specific directive of Congress, then the guidelines must give way. Id.

Mr. Hoyle argues that § 921(a)(20) is a "statutory prohibition" on the use of pardoned convictions under the sentencing guidelines. Aplt. Br. 17. He does not point out, however, any specific directive within the statute to this effect. Section 921 sets forth various definitions "used in this chapter," and subsection (a)(20) defines "crime punishable by imprisonment for a term exceeding one year . . . for purposes of this chapter." 18 U.S.C. § 920(a), (a)(20). "This chapter" refers to Chapter 44 ("Firearms") of Title 18 of the United States Code. In Chapter 44, "crime punishable by imprisonment for a term exceeding one year" is used in § 922(d)(1), (g)(1), and (n), which make it unlawful to provide a firearm to a known felon, possess a firearm as a felon, or ship or transport a firearm while under a felony indictment; § 924(e)(2)(B), which defines "violent felony"; and § 925(b), which exempts certain licensed persons from criminal liability. Thus, § 921(a)(20)'s definition of "crime punishable by imprisonment for a term exceeding one year"—and its exclusion of pardoned convictions—is limited to determining what offenses count as predicate offenses for § 922, determining who gets a greater minimum sentence under § 924(e)(1), and exempting certain persons from criminal liability altogether (§ 925(b)). The statutory definition does not illuminate what convictions the Commission can use to determine an appropriate sentence under the guidelines.

Although the language in the substantive criminal statute and sentencing guidelines may be similar, we have noted "that the inquiry under the statute is

separate from and independent of the one under the sentencing guidelines, unless indicated otherwise.  Thus, the statutory definition is controlling for the actual offense, but the commentary to the guideline controls for purposes of determining the sentence."  United States v. Plakio, 433 F.3d 692, 696 (10th Cir. 2005).  In Plakio, the fact that the defendant's conviction qualified as a "crime punishable by imprisonment for a term exceeding one year" under § 922(g)(1) did not also determine whether that conviction qualified as an offense "punishable by imprisonment for a term exceeding one year" under U.S.S.G. § 2K2.1.  Id.; see also United States v. Morris, 139 F.3d 582, 584 (8th Cir. 1998) (Section 921(a)(20) is controlling for purposes of defining felon-in-possession offense, while U.S.S.G. § 2K2.1 is controlling for purposes of determining resulting sentence).

Unless Congress has specifically directed otherwise, there is no conflict between exempting certain conduct from criminal liability under a statute and not exempting that same conduct from sentencing consideration.  The two provisions—§ 921(a)(20) and the sentencing guidelines—have different purposes.  The statute addresses criminal liability under § 922; that established, the guidelines consider a number of factors (including prior convictions) pertaining to sentencing.  That Congress sought to avoid felon-in-possession liability for persons who had their felonies negated by restoration of civil rights, see 18 U.S.C. § 921(a)(20), does not mean that Congress sought to avoid enhanced

- 10 -

punishment for persons who were nonetheless guilty of § 922 and two previous, albeit negated, felonies, see U.S.S.G. § 2K2.1(a)(2). The statute simply does not address how restoration of civil rights affects sentencing. That determination is within the sound discretion of the Sentencing Commission.

The one appellate decision reaching the opposite conclusion is unpersuasive. In United States v. Palmer, the Ninth Circuit held that, because the "governing statute [(§ 921(a)(20))] specifically precluded the use of a conviction for which civil rights have been restored, the district court erred in counting" the defendant's prior felony conviction towards his base offense level under U.S.S.G. § 2K2.1. 183 F.3d 1014, 1017 (9th Cir. 1999). Section 921(a)(20) governs sentencing, the court concluded, because "Chapter 44 includes both § 922 and § 924, which sets out maximum sentences for offenses under this chapter. Accordingly, 'for purposes of this chapter' clearly includes sentencing." Id.

Palmer's holding that § 920(a)(20) is a "governing statute" cabining the Commission's discretion in enacting sentencing guidelines is flawed for two reasons. First, in LaBonte, upon which Palmer purported to rely, 183 F.3d at 1018, the Supreme Court struck down sentencing guidelines where they conflicted with "specific requirements" or "specific directives" of Congress, 520 U.S. at 753, 757. Unless a statute constitutes a "specific" limitation on the Commission's broad discretion, see 520 U.S. at 757, the Commission has discretion to act. The Supreme Court found such specific limitations within 28 U.S.C. § 994, id. at 753,

- 11 -

a statute that delineates what the Commission "shall" and "shall not" do, see, e.g., 28 U.S.C. § 994(b)(1), (t).  It is a jump of logic to assume, as the Palmer court did, that because § 921(a)(20) "sets out maximum sentences for offenses under this chapter," it unquestionably controls the Commission's discretion to consider how prior convictions affect the appropriate sentence.[2]

Second, Palmer's lack of analysis undermines the soundness of its holding. After holding that pardoned convictions could not be used to establish a defendant's "base offense level," the Ninth Circuit went on to hold that the use of such convictions to compute a defendant's "criminal history category" did not conflict with the "statutory prohibition" of § 921(a)(20) because "criminal history category" was not addressed in Chapter 44.  Palmer, 183 F.3d at 1018.  However, this cannot be squared with the court's earlier holding that Chapter 44 "clearly includes sentencing."  Id. at 1017.  A defendant's criminal history category is as much a part of his "sentencing" as his base offense level, see Koon v. United States, 518 U.S. 81, 88 (1996), and neither are mentioned in Chapter 44.

---

[2]  This is not to say that the sentencing guidelines can never be in conflict with a statute defining a substantive offense or setting out a maximum sentence. If the guidelines sought to criminalize conduct that is lawful under statute, or sought to impose a sentence notwithstanding a statutory maximum sentence, the guidelines would conflict with a specific directive of Congress.  But that is not the case here.  As mentioned above, U.S.S.G. § 2K2.1 does not create criminal liability where none exists otherwise.  It imposes a sentence for conduct made unlawful by statute (e.g., § 922(g)) and also takes into account the defendant's susceptibility to recidivism, something that § 921(a)(20) does not specifically prohibit.

For these reasons, the district court properly overruled Mr. Hoyle's objection to counting his prior Kansas convictions towards his base offense level (U.S.S.G. § 2K2.1) and criminal history category (§ 4A1.1).

3.    Sufficient Evidence for Criminal Threat

While we review the district court's interpretation of the sentencing guidelines de novo, we review its factual findings for clear error. United States v. Kitchell, 653 F.3d 1206, 1226 (10th Cir. 2011). Under this standard of review, we will not disturb the district court's factual findings unless they have no basis in the record, and we view the evidence and inferences therefrom in the light most favorable to the district court's determination. Id.

Mr. Hoyle argues that the district court erred by increasing his offense level by four levels because there was insufficient evidence to find that he committed the Kansas felony "criminal threat" while possessing the silver revolver. Aplt. Br. 21-23. This is so, he contends, because the district court failed to consider Ms. Hall's "lack of credibility" as exhibited by her misdemeanor theft conviction. Id. at 21-22. He also contends the evidence is insufficient because Ms. Hall never told the 911 operator that Mr. Hoyle was pointing a gun "at her or anyone else," and other witnesses never stated that Mr. Hoyle pointed a gun at Ms. Hall. Id. at 22-23.

The guidelines provide for a four-level increase if the defendant "used or possessed any firearm or ammunition in connection with another felony offense."

U.S.S.G. § 2K2.1(b)(6)(B).  At the time of Mr. Hoyle's actions, the Kansas "criminal threat" statute made a felony of "any threat to . . . [c]ommit violence communicated with intent to terrorize another."  Kan. Stat. Ann. § 21-3419(a)(1) (2007).[3]  The district court found by a preponderance of the evidence that Mr. Hoyle committed this felony while possessing the silver revolver, 2 R. 44, in part because Ms. Hall testified that Mr. Hoyle pointed his gun at her and threatened to shoot, 2 Supp. R. 57-58.  The court determined that Ms. Hall's prior conviction for theft did not undermine her credibility.  2 R. 21-22, 44.

"The credibility of a witness at sentencing is for the sentencing court, who is the trier of fact, to analyze."  United States v. Deninno, 29 F.3d 572, 578 (10th Cir. 1994).  A determination of witness credibility is reviewed for clear error, and "[w]e will not hold that testimony is, as a matter of law, incredible unless it is unbelievable on its face, i.e., testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature."  United States v. Virgen-Chavarin, 350 F.3d 1122, 1134 (10th Cir. 2003) (quoting United States v. Mendez-Zamora, 296 F.3d 1013, 1018 (10th Cir. 2002)).  In this regard, the district court's credibility determination is "virtually unreviewable on appeal."  Id. (internal quotation marks omitted).

After reviewing the record, we hold that the district court did not clearly err

_____

[3]  This statute was repealed effective July 1, 2011.  2010 Kan. Sess. Laws ch. 136, § 307.

in crediting Ms. Hall's version of events, nor did it clearly err in finding by a preponderance of the evidence that Mr. Hoyle committed the Kansas felony of "criminal threat" while possessing the silver revolver.

AFFIRMED.