**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 29, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RANDALL TRAVIS GREEN,

      Petitioner - Appellant,

v.

MIKE ADDISON, Warden,

      Respondent - Appellee.

No. 14-5061
(D.C. No. 4:09-CV-00480-TCK-TLW)
(N.D. Okla.)

_____

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]
_____

Before **BRISCOE**, Chief Judge, **GORSUCH**, and **McHUGH**, Circuit Judges.
_____

    Petitioner-appellant Randall Green requests a certificate of appealability

(COA) to challenge the district court's denial of habeas corpus relief under 28 U.S.C.

§ 2254. Mr. Green seeks to challenge his convictions for sexual assault, arguing the

prosecution coerced false testimony from two of the victims. This court previously

reversed the district court's denial of habeas relief and remanded with instructions to

conduct an evidentiary hearing. On remand, the district court heard evidence and

_____

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

again denied relief. We now deny Mr. Green's request for a COA and dismiss the appeal.

## I.    BACKGROUND

In 2006, an Oklahoma jury convicted Mr. Green of ten felony offenses: three counts of first-degree rape; two counts of forcible sodomy; one count each of first-degree burglary, extortion, and kidnapping; and two counts of the lesser-included offense of second-degree rape.[1] He was sentenced to a total of seventy-three years in prison.

Mr. Green was charged with sexually assaulting four individuals. Relevant to this appeal, two of the victims, L.S. and J.C., testified at Mr. Green's trial. They both stated they were babysitting at the home of Christina Crawford when Mr. Green came to Ms. Crawford's house with a friend, Jeffrey Peppers. According to L.S. and J.C., Mr. Green took L.S. into a bedroom, where he raped her. Mr. Green later asked J.C. to go into the garage with him. Once in the garage, Mr. Green forced J.C. to perform oral sex and to have sexual intercourse with him. J.C. and Mr. Green then returned to the living room, and Mr. Green and Mr. Peppers left the house ten minutes later. L.S. and J.C. were each thirteen years old at the time of the assault.

Mr. Green was convicted of first-degree rape with respect to J.C. and L.S. On direct appeal, the Oklahoma Criminal Court of Appeals (OCCA) affirmed his convictions and sentence. Mr. Green then filed a pro se application for post-

---

[1] This recitation of the facts is drawn from our prior opinion in this case. *See Green v. Addison*, 500 F. App'x 712, 713 (10th Cir. 2012) (unpublished).

conviction relief in the Oklahoma courts, arguing he was denied due process of law by the prosecution's knowing use of false and coerced testimony from J.C. and L.S. In support of his petition, Mr. Green submitted a transcript of a conversation among J.C., J.C.'s mother, and David Starkey, who was conducting an independent investigation into official misconduct. Mr. Starkey recorded the conversation on January 27, 2008, and the recording was later transcribed by a court reporter. J.C. and her mother signed a notarized verification page, indicating they had reviewed the transcript and confirming the contents as "true and correct."

During the interview with Mr. Starkey, J.C. stated Mr. Green had not raped her and that she was coerced into falsely testifying against him by the prosecution. Specifically, J.C. alleged that Sgt. Wayne Stinnett, an investigator for the county district attorney's office, and Patrick Abitbol, an assistant district attorney, threatened to throw her "in juvie" if she did not testify that Mr. Green had raped her. J.C. also expressed her belief that L.S. had not been raped by Mr. Green. J.C. claimed L.S. accused Mr. Green of rape in retaliation for his refusal to date her. J.C. also told Mr. Starkey she thought L.S. had been pressured by the prosecution to make false allegations against Mr. Green.

The Oklahoma post-conviction court denied Mr. Green relief without holding an evidentiary hearing. The OCCA affirmed, holding the transcript "contains no recantation of the victim's original claims, nor does it constitute proof of [Mr. Green's] innocence." Mr. Green then filed a petition for habeas corpus relief under 28 U.S.C. § 2254 in the U.S. District Court for the Northern District of Oklahoma,

3

identifying seven grounds for relief and requesting an evidentiary hearing. The district court dismissed Mr. Green's petition in full and denied a COA. Mr. Green appealed and requested a COA on the single issue of whether his convictions rested on knowingly proffered perjured testimony. This court granted a COA, appointed counsel, and received briefing from Mr. Green and the State.

We held Mr. Green had diligently pursued his claim when he filed a notarized and signed transcript of J.C.'s conversation with Mr. Starkey. We further held Mr. Green had established that his new evidence, if credible, would entitle him to habeas corpus relief. We therefore remanded with instructions to hold an evidentiary hearing on the issue of whether Mr. Green's convictions were based on perjured testimony knowingly offered by the State.

On remand, the district court conducted an evidentiary hearing. Mr. Green presented three witnesses: himself, J.C., and J.C.'s mother. The State also presented three witnesses: Sgt. Stinnett, Mr. Abitbol, and Jennifer Lynn Sanbrano-Hester, a former assistant district attorney who had assisted Mr. Abitbol in prosecuting Mr. Green. After hearing from all witnesses, the district court found that J.C.'s testimony during the evidentiary hearing was not credible. The district court also entered a specific finding that the testimony of the prosecutors and Sgt. Stinnett was more credible than J.C.'s. As a result, it denied Mr. Green's request for relief. He now appeals and seeks a COA.

## II. DISCUSSION

### *A. Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a COA can issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, Mr. Green must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

Normally, under § 2254, a petitioner is entitled to federal habeas relief only if the state court's resolution of his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This "highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Further, we presume a state court's factual determinations are

5

correct unless the petitioner rebuts that "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

But these "deferential AEDPA standards of review do not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (internal quotation marks omitted). When state courts apply the wrong legal standards, "federal courts resolve the claim unconstrained by AEDPA deference—that is, we review *de novo* the state court's legal conclusions and resolution of mixed questions." *Trammell v. McKune*, 485 F.3d 546, 550 (10th Cir. 2007) (citations and internal quotation marks omitted). "The *de novo* standard also applies to our review of a federal district court's legal conclusions in a § 2254 action, though we review any factual findings it may have made for clear error." *Id.*

In the prior appeal in Mr. Green's case, this court held the OCCA applied the wrong legal standard to Mr. Green's petition. *Green v. Addison*, 500 F. App'x 712, 716 & n.2 (10th Cir. 2012). Accordingly, we held the deferential AEDPA standards do not apply to Mr. Green's claim. *See id.* Additionally, AEDPA's deferential standard does not apply "when a federal district court holds an evidentiary hearing and considers new evidence that was not before the state court at the time it reached its decision, even if the state court resolved the claim on the merits." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (holding that when a district court relies on new evidence adduced at an evidentiary hearing, the petitioner's claims are subject to de novo review). Thus, in this case, we review the district court's legal

6

conclusions de novo and its factual determinations for clear error, unrestrained by
AEDPA.

### B. Mr. Green Has Failed to Demonstrate the District Court's Credibility Determination Was Clearly Erroneous

We now turn our attention to Mr. Green's request for a COA. Mr. Green argues the district court clearly erred because it failed to consider the entire record and because it prejudged J.C.'s credibility. Specifically, Mr. Green argues the district court's credibility determination was colored by its previous denial of Mr. Green's request for relief. Mr. Green further contends the district court failed to consider evidence in the trial record that supports J.C.'s recantation at the evidentiary hearing, as well as Mr. Green's contention that J.C.'s trial testimony was coerced.

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Giglio v. United States*, 405 U.S. 150, 154 (1972) ("A new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury."). In our prior opinion in this case, we identified three factors Mr. Green must prove to prevail,

> The relevant inquiry in whether [Mr.] Green would be entitled to habeas relief is whether (1) "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony"; (2) "the prosecution knew, or should have known, of the perjury"; and (3) "there is a reasonable likelihood that the false testimony should have affected the judgment of the jury."

7

*Green v. Addison*, 500 F. App'x 712, 720 (10th Cir. 2012) (quoting *Agurs*, 427 U.S. at 103). Applying this test, the district court determined Mr. Green had failed to establish the first two factors.

Mr. Green agrees the *Agurs* test is the proper legal framework, but contends the district court clearly erred when it found that Sgt. Stinnett and Mr. Abitbol were more credible than J.C. As Mr. Green acknowledges, a district court's "determination of witness credibility is reviewed for clear error, and we will not hold that testimony is, as a matter of law, incredible unless it is unbelievable on its face, i.e., testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Hoyle*, 751 F.3d 1167, 1175 (10th Cir. 2014) (internal quotation marks and brackets omitted). However, our deference to the district court's credibility determination is not limitless.

"When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985). But because "factors other than demeanor and inflection go into the decision whether or not to believe a witness," credibility determinations are still subject to appellate review. *Id.* For example, "[d]ocuments or objective evidence may contradict the witness'[s] story; or the story itself may be so internally inconsistent or implausible on its face

8

that a reasonable factfinder would not credit it." *Id.* Under such circumstances, we "may well find clear error even in a finding purportedly based on a credibility determination." *Id.* (citations omitted). In contrast, where the finding of the trial court is based on its "decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence," the Supreme Court has instructed, "that finding, if not internally inconsistent, can virtually never be clear error." *Id.* (citations omitted). Thus, while the trial court's credibility findings are not completely unassailable, in the absence of extrinsic evidence contradicting one witness's testimony, we will defer to the district court's choice to believe one witness over another.

In arguing we should hold the district court here clearly erred in its credibility determination, Mr. Green relies on *Ortega v. Duncan*, 333 F.3d 102 (2d Cir. 2003). In *Ortega*, the defendant sought habeas corpus relief based on the recantation of a witness who testified at trial that he saw the defendant shoot the victim. *Id.* at 103–04. The defendant also provided evidence at the habeas proceeding from the witness's mother that failed to corroborate the witness's trial testimony that he was on his way to meet his mother when he witnessed the shooting, and that his mother had visited the crime scene and had seen the bodies. 333 F.3d at 108. After an evidentiary hearing, the district court found the witness's recantation "was unworthy of belief." *Id.* at 106. It therefore held the defendant had failed to meet his burden of "proving by a preponderance of the evidence that [the witness] was telling the truth" when he testified at the habeas proceeding and denied relief. *Id.* The Second Circuit

9

reversed, holding the district court had clearly erred in its credibility determination by conflating the question of whether the witness perjured himself at trial with the assessment of the witness's credibility at the subsequent hearing. *Id.* Because the defendant had identified specific evidence that called into question the truthfulness of the witness's trial testimony, the Second Circuit held the district court was required to consider that evidence in addition to the credibility of the witness's recantation when assessing the truthfulness of the trial testimony.

Mr. Green relies on *Ortega* to argue the district court here was required to consider all evidence supporting his claim that J.C. lied at trial, as well as the credibility of her recantation, in assessing the truthfulness of her trial testimony. But Mr. Green has not identified any documentary or testimonial evidence that factually contradicts J.C.'s trial testimony. *See Anderson*, 470 U.S. at 575. Instead, Mr. Green's arguments focus on inconsistencies in Sgt. Stinnett's and Mr. Abitbol's testimony and attempt to explain similar inconsistencies in J.C.'s and Mr. Green's testimony.

For example, Mr. Green argues Sgt. Stinnett's credibility was called into question when he denied having any knowledge of Mr. Green prior to his involvement in this case. In fact, Sgt. Stinnett had previously arrested Mr. Green on burglary charges. Mr. Green argues this inconsistency shows Sgt. Stinnett's dishonesty. But, even assuming Sgt. Stinnett deliberately lied, this fact would not show J.C.'s trial testimony was perjured. At best, it would call Sgt. Stinnett's own credibility into question. And the district court was entitled to weigh this

10

inconsistency, which was brought to light during cross-examination at the evidentiary hearing, against Sgt. Stinnett's claim to have forgotten his prior arrest of Mr. Green.[2]

Mr. Green similarly attacks the district court's assessment of Mr. Abitbol's credibility. The district court found it "extremely unlikely" that Mr. Abitbol would coerce J.C. to testify falsely against Mr. Green when there were three other complaining victims and Mr. Abitbol had decided to prosecute Mr. Green before learning of J.C.'s allegations. According to Mr. Green, the district court clearly erred because it overlooked "clear evidence in the record" that the cases involving the other victims "were beset by troubling shortcomings." But problems with the cases involving the other three victims do not demonstrate J.C.'s trial testimony was perjured. Nor do they demonstrate Mr. Abitbol knew or should have known J.C. was lying, as Mr. Green is required to show under *Agurs*. *See* 427 U.S. at 103 (stating that a petitioner must establish that "the prosecution knew, or should have known, of the perjury").

Finally, Mr. Green contends the district court's evaluation of J.C.'s credibility was fatally flawed because there were explanations for certain inconsistencies in J.C.'s testimony at the evidentiary hearing. But weighing the import of those inconsistencies is squarely within the district court's purview. The district court heard all the evidence, including J.C.'s trial testimony, her pretrial interviews, and

---

[2] Mr. Green's other arguments challenging Sgt. Stinnett's testimony fail for largely the same reasons. Although Mr. Green points to inconsistencies in Sgt. Stinnett's testimony and infers from those inconsistencies that Sgt. Stinnett lied at the evidentiary hearing, the district court was free to draw other inferences. This credibility determination was not clearly erroneous.

her testimony at the evidentiary hearing, and determined that her recantation lacked credibility.

Thus, unlike the defendant in *Ortega,* Mr. Green challenges only the district court's assessment of credibility issues, rather than its failure to consider extrinsic evidence suggesting that J.C. perjured herself at trial.[3] Although Mr. Green raised questions about Sgt. Stinnett's and Mr. Abitbol's credibility and provided explanations for the inconsistencies in J.C.'s and Mr. Green's testimony, he failed to identify extrinsic evidence undermining J.C.'s trial testimony. Nor has Mr. Green demonstrated that Sgt. Stinnett's and Mr. Abitbol's story is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson*, 470 U.S. at 575. Because the trial court's finding is based on a "decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.*

---

[3] Following oral argument, Mr. Green submitted a Rule 28(j) letter with supplemental authority. We have reviewed this authority and conclude the legal standard announced is consistent with our discussion of *Anderson* and *Ortega*.

12

### III. CONCLUSION

Mr. Green has failed to demonstrate that the district court's credibility determination was clearly erroneous. Accordingly, we DENY Mr. Green's request for COA and DISMISS the appeal.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

13