FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 25, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JORDAN MICHAEL MCCOWAN,

    Defendant - Appellant.

No. 21-8035
(D.C. No. 0:20-CR-00200-ABJ-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.
_____

Jordan Michael McCowan pled guilty to being a felon in possession of a

firearm under 18 U.S.C. § 922(g)(1).  The district court sentenced him to 37 months

in prison.  He argues on appeal that the court erred when it imposed a four-level

enhancement under U.S. Sentencing Guidelines Manual ("U.S.S.G.")

§ 2K2.1(b)(6)(B) (U.S. Sent'g Comm'n 2018), for possessing a firearm in connection

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

with another felony offense.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I.  BACKGROUND

### A.  *Factual History*

In September 2020, Mr. McCowan drove Lonnie Lieurance, Larry Turner, and Daniel Powell to an apartment complex in Cheyenne, Wyoming, to sell drugs to Jana Herd and Greg Branch.  Mr. McCowan was unarmed but knew Mr. Lieurance had a handgun and Mr. Turner had pepper spray.  Shortly after the group arrived at Ms. Herd's apartment, an altercation ensued.  Mr. Branch shot Mr. Lieurance and Mr. Turner.  Mr. Lieurance shot Ms. Herd while trying to shoot Mr. Branch.  All six individuals fled the scene.  After running to the parking lot, Mr. McCowan encountered Mr. Lieurance, who said he had been shot.  Mr. McCowan helped him into the car, drove him to a nearby gas station, and called 911.  Mr. Lieurance then gave his gun to Mr. McCowan, who fled before officers arrived.

In a "very convoluted" investigation, ROA, Vol. III at 57, most of those involved either refused to cooperate or gave inconsistent statements, *see, e.g.*, *id.* at 59 (noting Mr. Lieurance "gave a couple of different stories"); *id.* at 58 (suggesting Mr. Branch provided inconsistent statements).  The police eventually located Mr. McCowan and discovered the handgun in his refrigerator freezer.  He told the police that he and his cohorts went to Ms. Herd's apartment to sell a baggie of baking soda but represented it as cocaine.  He said that he kept the firearm because "he was afraid of retaliation for the incident," *id.* at 50, and that he hid it because he

2

knew he was a felon and "was not supposed to have a gun," *id.* at 31. Law enforcement did not recover any drugs and was not "sure who shot who first." *Id.* at 58.

## B. *Procedural History*

A federal grand jury indicted Mr. McCowan for being a felon in possession of a firearm in violation § 922(g)(1). He pled guilty under a written plea agreement.

### 1. **Presentence Report**

The United States Probation Office submitted a presentence investigation report (PSR). It recommended (1) a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6)(A); (2) a four-level enhancement under § 2K2.1(b)(6)(B) because Mr. McCowan "used or possessed any firearm or ammunition in connection with another felony offense"; and (3) a three-level reduction under U.S.S.G. § 3E1.1(a)-(b) for accepting responsibility. The rationale for the four-level enhancement was that Mr. McCowan possessed Mr. Lieurance's gun in connection with being an accessory after the fact to aggravated assault committed by Mr. Lieurance. The PSR recommended a total offense level of 15, a criminal history category of VI, and a Guidelines range of 41 to 51 months in prison.

Mr. McCowan objected to the § 2K2.1(b)(6)(B) enhancement, arguing there was no evidence of an aggravated assault because it was unclear who shot first and Mr. Lieurance may have shot in self-defense. He did not otherwise object to the PSR.

3

2. **Sentencing Hearing**

At the sentencing hearing, the Government argued, based on the PSR and testimony of an investigating officer, that "multiple theories" supported the enhancement: Mr. McCowan possessed the gun in connection with (1) a felony drug offense, (2) being an accessory after the fact to aggravated assault by Mr. Lieurance, and (3) being an accessory after the fact to Mr. Lieurance's possession of the firearm as a felon. *Id.* at 68. The district court found no evidence for the third theory—that Mr. McCowan knew Mr. Lieurance was a felon prohibited from possessing the gun—but it did find the record supported the other two theories. In particular, the court noted that a conviction is not required for the other "felony offense" under § 2K2.1(b)(6)(B), and observed "we have that situation clearly involved in this matter, in that another conviction has not been obtained for any drug offense or . . . for an aggravated assault charge." *Id.* at 76.

The district court concluded that § 2K2.1(b)(6)(B) applied because (1) Mr. McCowan and Mr. Lieurance "were involved in a drug offense";[1] (2) it was "a fair inference" that Mr. Lieurance brought the gun "for protection and to ensure that the offense would occur"; and (3) "the shooting occurred in that environment"

---

[1] Although the court stated it would "never know" for certain whether the drugs were real, ROA, Vol. III at 76, it doubted Mr. McCowan's statement that the drugs were fake, *see id.* at 72 (noting Mr. McCowan stated the drugs were fake "after the fact"); *id.* at 83 (questioning why, "if [Mr. McCowan's] story is true" and he planned to sell baking soda as cocaine, he would "take that risk and carry a gun . . . in any event"); *see also id.* at 81 (stating Mr. McCowan's record included "drug crimes").

4

and "in [Mr. McCowan's] presence." *Id.* at 76-77.  The court acknowledged the enhancement was "a close question," *id.* at 76, and made "a substantial difference" in the Guidelines calculation, *id.* at 75.

The Government and defense counsel agreed to a one-level reduction because Mr. McCowan's possession of the gun was "fleeting." *Id.* at 79-80.  At an offense level of 14, his Guidelines range was 37 to 46 months.  The Government recommended a sentence at the low-end, and the court sentenced Mr. McCowan to 37 months in prison.  This appeal followed.

## II.  DISCUSSION

### A.  *Issue and Standard of Review*

Mr. McCowan contends the district court procedurally erred in enhancing his sentence under § 2K2.1(b)(6)(B).  "We review the district court's application of the Sentencing Guidelines for abuse of discretion.  In applying that standard, we review questions of law de novo and factual findings for clear error." *United States v. Stein*, 985 F.3d 1254, 1266 (10th Cir.) (citation and quotations omitted), *cert. denied*, 142 S. Ct. 425 (2021).  As such, "we will not disturb the district court's factual findings unless they have no basis in the record, and we view the evidence and inferences therefrom in the light most favorable to the district court's determination." *United States v. Hoyle*, 751 F.3d 1167, 1174 (10th Cir. 2014).  To find clear error, "we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free

to substitute our judgment for that of the district judge." *United States v. Garcia*,

635 F.3d 472, 478 (10th Cir. 2011) (quotations omitted).

### B. *Legal Background*

"[T]he government must prove facts supporting a sentencing enhancement by a

preponderance of the evidence." *Id.* The question here is whether "the defendant

used or possessed any firearm or ammunition in connection with another felony

offense." U.S.S.G. § 2K2.1(b)(6)(B).

The Application Notes to § 2K2.1 clarify the elements of (b)(6)(B):[2]

> (1) "another felony offense" is "any federal, state, or local
> offense, other than the . . . [underlying] firearms
> possession . . . offense, punishable by imprisonment for a
> term exceeding one year, regardless of whether a criminal
> charge was brought, or a conviction obtained." § 2K2.1
> cmt. n.14(C).
>
> (2) possession of a firearm is "in connection with" another
> felony offense "if the firearm . . . facilitated, or had the
> potential of facilitating, another felony offense." *Id.*
> § 2K2.1 cmt. n.14(A).
>
> (3) "the court must consider the relationship between the
> instant offense and the other offense, consistent with
> relevant conduct principles." *Id.* § 2K2.1 cmt. n.14(E)
> (citing U.S.S.G. § 1B1.3(a)(1)-(4) & cmt.).

Relevant conduct includes "all acts and omissions" "during the commission of

the offense of conviction, in preparation for that offense, or in the course of

---

[2] *See generally United States v. Morris*, 562 F.3d 1131, 1136 (10th Cir. 2009)
(noting we apply the Application Notes unless they "so far depart from the language
of the [g]uideline that they are inconsistent with, or a plainly erroneous reading of the
guideline" (brackets and quotations omitted)).

attempting to avoid detection or responsibility for that offense." § 1B1.3(a)(1). This applies not only to the defendant's "acts and omissions," *id.* § 1B1.3(a)(1)(A), but also those of others that were "within the scope of," "in furtherance of," and "reasonably foreseeable in connection with [jointly undertaken] criminal activity," *id.* § 1B1.3(a)(1)(B). Relevant conduct further includes "all acts and omissions" covered by (a)(1)(A) and (a)(1)(B) "that were part of the same course of conduct or common scheme or plan as the offense of conviction." § 1B1.3(a)(2). Depending on the circumstances, multiple relevant-conduct principles may apply. *Id.* § 1B1.3 cmt. n.2.

## C. *Application*

We consider whether the Government carried its burden on the "three elements" of § 2K2.1(b)(6)(B)—"(1) [the defendant] use[d] or possess[ed] a firearm (2) in connection with (3) another felony offense." *United States v. Marrufo*, 661 F.3d 1204, 1207 (10th Cir. 2011). This appeal turns on the second element.

On the first element, Mr. McCowan admits he possessed Mr. Lieurance's gun. On the third element, Mr. McCowan contests the district court's determination that the other "felony offense" was accessory after the fact to aggravated assault by Mr. Lieurance. *See* Aplt. Opening Br. at 11-12 (arguing "[t]he shooting could have been in self-defense and therefore not a crime"). But he admits that he went to Ms. Herd's apartment "for a drug offense," *id.* at 4, and he does not contest the court's determination that the other "felony offense" was "a drug offense," ROA,

7

Vol. III at 76.[3]  We therefore focus, as Mr. McCowan does, on the "in connection

with" element under § 2K2.1(b)(6)(B).  *See United States v. Sanchez*, 22 F.4th 940,

942 (10th Cir. 2022); *Marrufo*, 661 F.3d at 1207.

Possession of a firearm is "in connection with" another felony offense if "the

firearm . . . facilitated, or had the potential of facilitating, another felony offense."

U.S.S.G. § 2K2.1 cmt. n.14(A); *see also id.* § 2K2.1 cmt. n.14(B) (noting "the

presence of [a] firearm" "in close proximity to drugs" has the potential to facilitate a

"drug trafficking offense").  "[F]acilitate" means "to make easier."  *Marrufo*,

661 F.3d at 1207.

As the district court found, Mr. Lieurance brought the gun to the drug deal "for

protection and to ensure that the offense would occur."  ROA, Vol. III at 77.  The

firearm potentially made the drug offense easier and thus was "in connection with"

the offense.  *See United States v. Gambino-Zavala*, 539 F.3d 1221, 1230 (10th Cir.

2008) (stating the firearm "had the potential to facilitate illegal drug transactions by

helping [the defendant] protect himself and his drug supply").[4]

---

[3] *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(c), 846.  We thus need not address his argument regarding accessory after the fact to aggravated assault.

[4] *See also United States v. Flores*, 149 F.3d 1272, 1280 (10th Cir. 1998) (noting, with respect to an enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon in connection with a drug crime, that "the weapon may simply serve as a potentially deadly means of protecting the trafficker's goods"); *United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir. 1998) ("Handguns are widely recognized as a tool of the drug dealers trade.").

Mr. McCowan counters, without citation to authority, that he possessed the gun only after the drug deal and therefore did not possess the gun "in connection with" the offense. Whether or not he possessed the gun during the drug offense, § 2K2.1(b)(6)(B) plainly encompasses possession of the firearm "in connection with" another felony offense.[5] Hiding a firearm that was used during a felony drug offense fits the bill.

Moreover, the relevant-conduct principles embodied in § 2K2.1(b)(6)(B) extend to Mr. Lieurance's bringing a gun to the drug deal and the drug offense constituting jointly undertaken criminal activity. And Mr. McCowan's (1) participation in the drug offense, (2) receipt and possession of the gun immediately after the offense, (3) hiding the gun, and (4) continued possession of the gun for two days after the drug offense were "part of the same course of conduct" underlying his felon-in-possession conviction.[6] *See* U.S.S.G. § 1B1.3(a)(2).

---

[5] The Sentencing Commission could have been more explicit if it intended that the firearm be possessed during the other felony. *See, e.g.*, 18 U.S.C. § 924(c)(1)(A) (prohibiting the possession of a firearm "during and in relation to" a drug trafficking crime).

[6] *See also* § 1B1.3 cmt. n.5(B)(ii) (stating, in pertinent part, that "[o]ffenses . . . may . . . qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode"); *id.* § 1B1.3(a)(2) (noting the "course of conduct" relevant-conduct principle applies "to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts"); *id.* § 3D1.2(d) (listing § 2K2.1 as a groupable offense).

Mr. McCowan's conduct and Mr. Lieurance's conduct that is attributable to Mr. McCowan satisfy the "in connection" element of § 2K2.1(b)(6)(B). "[R]einforcing this analysis is our obligation to defer to the district court's application of section 2K2.1(b)(6) to the facts." *Marrufo*, 661 F.3d at 1209. Because the record shows that Mr. McCowan possessed a firearm in connection with a felony drug offense, the district court properly applied § 2K2.1(b)(6)(B).

## III.  CONCLUSION

We affirm Mr. McCowan's sentence and the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

10